FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT 2005 MAR 17 P 12:31
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA

**05 10507 NG**

Plaintiff,

v.

SS NOBSKA its engines, boilers,
lockers, cables, chains, tackle, fittings
and spare parts, apparel, outfit, tools
and other equipment, and all other
appurtenances, etc., *in rem*,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

RECEIPT # _____
AMOUNT $250
SUMMONS ISSUED N/A
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. _town_
DATE 3/17/05

## UNITED STATES' VERIFIED COMPLAINT *IN REM*

Plaintiff, United States of America, for its complaint against the defendant,

the SS Nobska, alleges upon information and belief:

### Admiralty Jurisdiction, Venue and Authority to Proceed

1.    This is a cause within the admiralty and maritime jurisdiction of this

Honorable Court.  U.S. Const., Art. III, § 2; 28 U.S.C. § 1333(1).  Plaintiff's claim

is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure.

2.    At all material times, defendant, the SS Nobska (the "VESSEL"), with

its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel,

outfit, tools and other equipment, and all other appurtenances, etc. to said vessel, whether on board or not, is within this District and the jurisdiction of this Honorable Court. Venue is properly in this Court. 28 U.S.C. §§ 1391 and 1395 (2005).

3.     Plaintiff, the United States of America, a sovereign nation, is authorized to sue. 28 U.S.C. § 1345 (2005). It brings this claim on behalf of the Department of the Interior, National Park Service ("NPS").

<u>Factual Background</u>

4.     The Affidavit of David Brouillette ["Ex. A"], Deputy Superintendent of the Boston National Historical Park, a unit of the National Park System located in the city of Boston, Massachusetts, is incorporated herein and made a part hereof by this reference. It alleges the following facts:

5.     By Lease Agreement 1443AG1720-06-005 ("Agreement") dated June 17, 1996, the NPS's Boston National Historical Park, a unit of the National Park System located in the city of Boston, Massachusetts, agreed to allow The New England Steamship Foundation to use Dry Dock No. 1, at no cost, to refurbish a coastal steamer known as the SS Nobska for a period of one year, with an option to extend upon mutual agreement for additional one year periods, not to

exceed a total of five (5) years.[1]  This Agreement was ultimately extended for the full term, until June 17, 2001.  The Agreement required The New England Steamship Foundation, which owns the vessel, to remove the SS Nobska from the dry dock within sixty days of its expiration.

6.    Prior to the termination of the Agreement, by letter dated May 22, 2001, The New England Steamship Foundation was advised that the SS Nobska must be removed from Dry Dock No. 1 by August 16, 2001.

7.    When the SS Nobska was not removed, the NPS notified The New England Steamship Foundation, by letter dated August 4, 2003, that it would be assessed an impoundment and storage fee of $750 per day payable weekly effective July 14, 2003, sixty days from the May 5, 2003, notice.

8.    As of February 28, 2005, impoundment, storage or demurrage fees totaling $214,813.67 have been assessed and billed to The New England Steamship Foundation, but no such fees have been paid.

9.    The SS Nobska has occupied Dry Dock No. 1 since 1996, during which time The New England Steamship Foundation did not restore the vessel, make it seaworthy, or even floatable.  No work has occurred since early 2001, apparently due to a lack of funding.  It is "high and dry," is without a crew, has no

---

[1]    16 U.S.C. § 1a-2(g) provides authority.

cargo aboard and its machinery will not operate.

10.     The NPS, an organization itself charged with the role of historic preservation, has for many years been patient and cooperative with The New England Steamship Foundation. It provided that institution with every opportunity to succeed in its restoration effort. In so doing, it consciously exercised forbearance in taking legal action. But, this situation cannot continue indefinitely. The dry dock must be returned to service.

### Qualification of the NPS to Act as Custodian of the SS Nobska

11.     The NPS respectfully submits that it can continue to adequately and safely keep the SS Nobska, in lieu of the Marshal, during the pendency of this action and until further Order of the Court. In this regard, the NPS agrees to provide adequate supervision for the reasonable physical care and security of the SS Nobska and to return it in the same order and condition as when the Court might appoint the NPS as the Substitute Custodian.

12.     The NPS agrees to promptly pay all costs and expenses arising out of its custodianship without cost to the United States Marshal. The services to be rendered by the NPS include, but are not limited to: All labor, material, and equipment to safeguard the SS Nobska from further damage or disassembly.

13.     The NPS agrees that during its custodianship of the SS Nobska, no

4

repairs or changes to the vessel, except for preservation work and routine maintenance required for the vessel's safekeeping, will be permitted without order of the Court.

14.    The NPS agrees to accept substitute custodianship of the SS Nobska in accordance with the Order Appointing Substitute Custodian.

### The United States is Entitled to a Maritime Lien on the SS Nobska

15.    Based on the foregoing facts, a maritime lien in favor of the United States is created by operation of general maritime law, to wit:

a.    The New England Steamship Foundation's breach of a maritime contract by failing to remove the SS Nobska from Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston Historical Park, within 60 days of the expiration of that Agreement, gives rise to a maritime lien against the vessel.

b.    The continuing occupancy of the SS Nobska of Dry Dock No. 1, without authorization, constitutes the tort of trespass on the property of the United States, which also gives rise to a maritime lien.

16.    Finally, a maritime lien in favor of the United States is created by statute as: "[A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner – (1) has a maritime lien on the vessel; [and] (2) may bring a civil action in rem to enforce the lien. . . ." 46 U.S.C. § 31342(a)

(2005).  The term "'necessaries' includes repairs, supplies, towage, and the <u>use of a</u> <u>dry dock</u> or marine railway."  46 U.S.C. § 31301(4) (2005) (Emphasis added).

Prayer for Relief

WHEREFORE, plaintiff, United States of America, prays:

1.      That actual notice of the commencement of this suit in the manner approved by the Court be given to an officer of the The New England Steamship Foundation, and to any person, firm or corporation which has recorded a notice of claim of any undischarged lien upon the VESSEL;

2.      That, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (as amended), this Honorable Court enter an order authorizing a warrant for the arrest of the VESSEL.

3.      That said warrant be issued for the arrest of the VESSEL, together with its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel, outfit, tools and other equipment, and all other appurtenances, etc. to said VESSEL, whether on board or not;

4.      That plaintiff be declared the holder of a valid lien on the VESSEL for breach of maritime contract, trespass and the use of its dry dock, to the extent of its claims herein;

5.      That judgment of condemnation and sale be entered against said

6

VESSEL, its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel, outfit, tools and other equipment, and all other appurtenances, etc., to said VESSEL appertaining or belonging whether now owned or hereafter acquired, whether on board or not, and all additions, improvements, renewals, and replacements made to said VESSEL;

6.      That an order of interlocutory sale of the VESSEL be issued because the VESSEL has been detained in custody and continues to depreciate;

7.      That the VESSEL be sold and the proceeds of the sale of the VESSEL be applied first to cover the costs and expenses associated with this action;

8.      That the successful bidder be required to deposit 10% of their bid within three days of the sale, the remainder to be paid within 10 days. If such payments are not made, ownership shall revert to the next highest bidder who shall be required to deposit 10% of that bid within three days of notification, the remainder to be paid within 10 days.

9.      That, to ensure that Dry Dock No. 1 is cleared expeditiously, the successful bidder remove the SS Nobska within 30 days of the sale. If that party shall fail to remove the VESSEL within 30 days of the sale, then ownership of the VESSEL shall, upon motion of the government and order of the Court, revert to the NPS.

10.    That the Court order judgment in favor of the plaintiff, the United States of America, against the VESSEL and its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel, outfit, tools and other equipment, and all other appurtenances, etc. thereto, for all sums due and owing, for insurance premiums, if any, and other VESSEL care and preservation costs paid by the plaintiff after the date of the commencement of this action, for reasonable attorneys' fees, and for the costs of this suit incurred herein;

11.    That the Court decree that any person, firm or corporation claiming any interest as to or in the VESSEL, be forever barred and foreclosed as to any right, equity of redemption, claim or lien in or to said VESSEL, its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel, outfit, tools and other equipment, and all other appurtenances, etc.; and

12.    That plaintiff, the United States of America, have such other and further relief as may be just and proper.

Dated:  March 17, 2005.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

MICHAEL J. SULLIVAN
United States Attorney

8

ANITA JOHNSON
Assistant U.S. Attorney


*Michael A. DiLauro*

MICHAEL A. DILAURO, Trial Attorney
U.S. Department of Justice
Post Office Box 14271
Washington, D.C. 20044-4271
Tel. (202) 616-4019
Fax (202) 616-4159
Counsel for the United States

OF COUNSEL:

Anthony R. Conte, Esq.
Regional Solicitor
U.S. Department of the Interior
Office of the Solicitor
One Gateway Center, Suite 612
Newton, MA 02458-2802

9

<u>VERIFICATION</u>

I am an attorney employed the Aviation & Admiralty Litigation Office, Torts Branch, Civil Division, U.S. Department of Justice, and one of the attorneys for plaintiff United States of America herein, and make this verification by authority of plaintiff and on its behalf. I have reviewed the foregoing complaint, know the contents thereof, and, from information officially furnished to me, believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this *17th* day of *March*_____, 2005.


_____
MICHAEL A. DILAURO
Trial Attorney

10

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS**

SS NOBSKA, In Rem

(see attached)

FILED
IN CLERK'S OFFICE

2005 MAR 17  P 12: 31

DISTRICT COURT
DISTRICT OF MASS

(b)  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c)  Attorney'S (Firm Name, Address, and Telephone Number)
MICHAEL A. DiLAURO, ESQ.
USDOJ, TORTS BRANCH, CIVIL DIVISION
P.O. BOX 14271, WASHINGTON, DC  20044-4271
(202) 616-4019

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | | DEF | | | | DEF |
|---|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X " in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

MARITIME LIEN ARISING FROM BREACH OF MARITIME CONTRACT; MARITIME TORT & PER 46 USC 31342(a)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
VESSEL ARREST

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE
03-17-2005

SIGNATURE OF ATTORNEY OF RECORD
Michael A. DiLauro

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
APPENDIX C - LOCAL COVER SHEET
CLERKS OFFICE

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)  United States of America v. SS NOBSKA,
    in rem

    2005 MAR 17 P 12: 3

    U.S. DISTRICT COURT
    DISTRICT OF MASS.

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
    COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

    ___   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright  cases

    _X_   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___   V.    150, 152, 153.

    05-10507 NG

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES.  (SEE LOCAL RULE 40.1(G)).  IF MORE THAN ONE PRIOR RELATED CASE
    HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

    ____ none

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?
                                                        YES [ ]        NO [X]

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?    (SEE 28 USC §2403)
                                                        YES [ ]        NO [X]
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                        YES [ ]        NO [X]

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
    28 USC §2284?
                                                        YES [X]        NO [ ]

7.  DO ALL OF THE PARTIES  IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
    COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"),  RESIDING IN MASSACHUSETTS RESIDE IN THE
    SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                        YES [ ]        NO [ ]

        A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

             EASTERN DIVISION [ ]        CENTRAL DIVISION [ ]        WESTERN DIVISION [ ]

        B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
             GOVERNMENTAL AGENCIES,  RESIDING IN MASSACHUSETTS RESIDE?

             EASTERN DIVISION [ ]        CENTRAL DIVISION [ ]        WESTERN DIVISION [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Michael A. DiLauro, Esq., U.S. Dept of Justice
ADDRESS  P.O. Box 14271, Washington, DC  20044-4271
TELEPHONE NO.  (202) 616-4019

(AppendixC.wpd - 11/27/00)

**DEFENDANT – VESSEL OWNER:**

Warren Hartwell, Chairman
The New England Steamship Foundation
c/o WRH Industries, LTD.
957 Airport Road
Fall River, MA 02720
(508) 674-2444


**LOCATION OF VESSEL:**

Charlestown Navy Yard
Dry Dock #1
Charlestown, MA

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| v. ) | |
| ) | |
| SS NOBSKA its engines, boilers, ) | |
| lockers, cables, chains, tackle, fittings ) | |
| and spare parts, apparel, outfit, tools ) | |
| and other equipment, and all other ) | |
| appurtenances, etc., *in rem,* ) | |
| ) | |
| Defendant. ) | |
| _____) | |

AFFIDAVIT OF
PROPOSED SUBSTITUTE CUSTODIAN

DAVID BROUILLETTE, for his declaration pursuant to 28 U.S.C. ' 1746, states as follows:

1) I am employed by the United States Department of the Interior, National Park Service (NPS) as Deputy Superintendent of the Boston National Historical Park, a unit of the National Park System located in the city of Boston, Massachusetts.

2) In my capacity as Deputy Superintendent, I am responsible for all aspects of the administration of the Boston National Historical Park, including the authorization of the use of park property.

Factual Background

3) By Lease Agreement 1443AG1720-06-005 ("Agreement") dated June 17, 1996, the NPS agreed to allow The New England Steamship Foundation to use Dry Dock No. 1, at no cost, to refurbish a coastal steamer known as the SS Nobska for a period of one year, with an option to extend upon mutual agreement for

additional one year periods, not to exceed a total of five (5) years.[1]  This Agreement was ultimately extended for the full term, until June 17, 2001.  The Agreement required The New England Steamship Foundation, which owns the vessel, to remove the SS Nobska from the dry dock within sixty days of its expiration.

4)  Prior to the termination of the Agreement, by letter dated May 22, 2001, The New England Steamship Foundation was advised that the SS Nobska must be removed from Dry Dock No. 1 by August 16, 2001.

5)  When the SS Nobska was not removed, the NPS notified The New England Steamship Foundation, by letter dated August 4, 2003, that it would be assessed an impoundment and storage fee of $750 per day payable weekly effective July 14, 2003, sixty days from the May 5, 2003, notice.

6)  As of February 28, 2005, impoundment, storage or demurrage fees totaling $214,813.67 have been assessed and billed to The New England Steamship Foundation, but no such fees have been paid.

7)  The SS Nobska has occupied Dry Dock No. 1 since 1996, during which time The New England Steamship Foundation did not restore the vessel, make it seaworthy, or even floatable.  No work has occurred since early 2001, apparently due to a lack of funding.  It is "high and dry," is without a crew, has no cargo aboard and its machinery will not operate.

8)  The NPS, an organization itself charged with the role of historic preservation, has for many years been patient and cooperative with The New England Steamship Foundation.  It provided that institution with every opportunity to succeed in its restoration effort.  In so doing, it consciously exercised forbearance in taking legal action.  But, this situation cannot continue indefinitely.  The dry dock must be returned to service.

### Qualification of the NPS to Act as Custodian of the SS Nobska

9)  The NPS respectfully submits that it can continue to adequately and safely keep the SS Nobska, in lieu of the Marshal, during the pendency of this action and until further Order of the Court.  In this regard, the NPS agrees to provide adequate supervision for the reasonable physical care and security of the SS Nobska and to return

---

[1]       16 U.S.C. ' 1a-2(g) provides authority.

it in the same order and condition as when the Court might appoint the NPS as the Substitute Custodian.

10) The NPS agrees to promptly pay all costs and expenses arising out of its custodianship without cost to the United States Marshal. The services to be rendered by the NPS include, but are not limited to: All labor, material, and equipment to safeguard the SS Nobska from further damage or disassembly.

11) The NPS agrees that during its custodianship of the SS Nobska, no repairs or changes to the vessel, except for preservation work and routine maintenance required for the vessel's safekeeping, will be permitted without order of the Court.

12) The NPS agrees to accept substitute custodianship of the SS Nobska in accordance with the Order Appointing Substitute Custodian.

I declare under penalty of perjury that the foregoing is true and accurate this $17$ day of _March_ 2005.

_Daniel Brouillette_
DAVID BROUILLETTE
Deputy Superintendent
Boston National Historical Park

3

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of March, 2005, a copy of the

foregoing was forward via FedEx to the following:

> Warren Hartwell, Chairman
> The New England Steamship Foundation
> c/o WRH Industries, LTD.
> 957 Airport Road
> Fall River, MA 02720
> (508) 674-2444

_Michael A. DiLauro_
MICHAEL A. DILAURO, Trial Attorney