UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-10507 NG |
| | ) | |
| v. | ) | |
| | ) | |
| SS NOBSKA its engines, boilers, | ) | |
| lockers, cables, chains, tackle, fittings | ) | |
| and spare parts, apparel, outfit, tools | ) | |
| and other equipment, and all other | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

UNITED STATES' MOTION FOR SUMMARY JUDGMENT
DECLARING A MARITIME LIEN AGAINST THE SS NOBSKA
WITH INCORPORATED MEMORANDUM OF LAW

In 1996, The New England Steamship Foundation ("Foundation") entered into a

written agreement ("Agreement") with the United States, pursuant to which it put the SS

NOBSKA into Dry Dock No. 1, Boston Historical Park, to refit it as a day cruise boat.

The Agreement required no payment by the Foundation to the government, but

only that the ship would be removed by the Foundation at the end of the specified term.

The United States properly requested that it be removed by August 16, 2001.  Today, the

NOBSKA remains in Dry Dock No. 1, incomplete and in state of utter disrepair.  The

Foundation has no right to keep the NOBSKA in a public dry dock indefinitely, yet it has

no plan, nor apparently the ability, to remove it.  Furthermore, the Foundation has refused

to turn the NOBSKA over to the United States either through abandonment or sale, so that the government may remove it.

The NPS needs to regain the use of the dry dock to repair the dry dock itself and to make it available to the USS CONSTITUTION and the USS CASSIN YOUNG, both of which require maintenance. To get the NOBSKA out, the United States filed this action asserting a maritime lien for the continued occupation of its dry dock. On March 17, 2005, in response to the United States' motion, this Court issued a warrant of seizure, took the vessel into its custody and appointed the National Park Service ("NPS") a substitute custodian.

The United States moves the Court to declare it the holder of a valid maritime lien, in the amount of $214,813.67,[1] by operation of the Maritime Commercial Instruments and Lien Act ("MCILA"), 46 U.S.C. app. §§ 31301-43, which allows the provider of necessaries to a vessel on order of the owner to assert a maritime lien against the vessel and to bring a civil action in rem to enforce that lien. As the facts and argument set forth below demonstrate, there is no genuine issue of material fact and the United States is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

---

[1]     While the complaint asserts a lien of $214,813.67, it now appears that this figure represents only a fraction of the value of the dry dock services provided. The correct figure exceeds $502,063.97.

A.    STATEMENT OF MATERIAL FACTS OF RECORD IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT.

1.    The New England Steamship Foundation ("Foundation"), owner of the

NOBSKA, planned to refit it so that it might sail again, making stops in Martha's

Vineyard, Nantucket and New Bedford.  Ex. A and B.

2.    By Lease Agreement 1443AG1720-96-005 ("Agreement") dated June 17,

1996, the NPS's Boston National Historical Park, a unit of the National Park System

located in the city of Boston, Massachusetts, agreed to allow the Foundation to use Dry

Dock No. 1, at no cost, to refurbish the NOBSKA for a period of one year, with an option

to extend upon mutual agreement for additional one year periods, not to exceed a total of

five (5) years.  Ex. C, Attach. 1, p. 4.  This Agreement was ultimately extended for the

full term, until June 17, 2001.  Ex. C, Attach. 2-4.

3.    The Agreement required that the Foundation maintain comprehensive

general liability insurance, naming the United States as an additional insured party,

throughout the term of the Agreement.  Ex. C, Attach. 1, pp. 3-4.

4.    On information and belief, the Foundation no longer maintains the

insurance policy described above.

5.    The Agreement further required that the Foundation remove the NOBSKA

from the dry dock within sixty days of its expiration.  Ex. C, Attach. 1, pp. 5-6.

6.    By letter dated May 22, 2001, the NPS asked the Foundation to remove the

NOBSKA by August 16, 2001.  Ex. C, Attach. 5.

3

7.    On November 12, 2002, Mr. Terence Savage, the superintendent of the Boston National Historical Park, met with the Foundation president, Mr. Arthur Flathers, told him that the NPS could not allow the NOBSKA to occupy the dry dock indefinitely and asked him to consider having the Foundation abandon the vessel to the NPS. Ex. C, ¶ 6.

8.    In February 2003, the Foundation rejected the idea of abandonment. Ex. C, Attach. 6.

9.    The NPS, by letter of March 31, 2003, explained that it was "essential that the NOBSKA be removed from the dry-dock." Ex. C, Attach. 7.

10.    On May 5, 2003, the NPS notified the Foundation that it would impound the NOBSKA pursuant to 36 C.F.R. § 2.22(b)(1), that the said vessel should be considered abandoned property pursuant to 36 C.F.R. § 2.22(c) and subject to disposal, unless claimed and removed with sixty (60) days of receipt of the letter. Ex. C, Attach. 8.

11.    On July 7, 2003, the Foundation again stated that it would seek funding to remove the NOBSKA, which it stated would cost ". . . approximately $2 million and [would] take 3-4 months." Ex. C, Attach. 9.

12.    On August 4, 2003, the NPS notified the Foundation that the NOBSKA was impounded pursuant to 36 C.F.R. § 2.22(b)(1), would be considered abandoned property pursuant to 36 C.F.R. § 2.22(c) and would be subject to disposal unless claimed within 60 days of receipt of that letter. The NOBSKA was assessed an impoundment and storage

4

fee of $750 per day payable weekly effective July 14, 2003, sixty days from the May 5, 2003, notice. Ex. C, Attach. 10.

13.    The Foundation wrote on August 25, 2003, admitting that it had ". . . seriously overstayed its original commitment . . . ." Ex. C, Attach. 11.

14.    Subsequently, the NPS believed it reached an agreement to buy the NOBSKA for $1.00. Ex. C, Attach. 12 and 13.

15.    The Foundation did not follow through with the sale. Ex. C, Attach. 14.

16.    The NOBSKA has occupied Dry Dock No. 1 since 1996, during which time the Foundation did not restore the vessel, make it seaworthy, or even floatable. No work has occurred since early 2001. It is high and dry, is without a crew, has no cargo aboard and its machinery will not operate. Ex. C, ¶ 16. The attached photographs fairly and accurately depict the NOBSKA's condition on September 29, 2003, and October 3, 2003. Ex. C, Attach. 15-25. The vessel has continued to deteriorate since they were taken.

17.    Following the expiration of the Agreement, the United States has continued to provide dry dock facilities to the NOBSKA. While the complaint asserts a lien of $214,813.57, it now appears that this figure is too low. Ex. C, ¶ 16.

18.    The NPS sent letters captioned "NOTICE OF INTENT TO COLLECT A DEBT," most recently on April 26, 2005. As of that date, the total amount claimed as due by the NPS was $502,063.97. Ex. C, Attach. 26.

19.    The NOBSKA was arrested by the United States Marshal of this District on

April 1, 2005, pursuant to a warrant of arrest authorized by order of this Court in accordance with Supplemental Admiralty Rule C(3). Clerk's file, Doc. No. 12.

20.     On March 17, 2005, the summons, verified complaint in rem, application for issuance of warrant of seizure, application for appointment of substitute custodian, order for issuance of warrant and seizure, in rem warrant of arrest, order for appointment of substitute custodian and notices of appearance were served on Warren Hartwell, Chairman of The New England Steamship Foundation, c/o WRH Industries, Ltd., 957 Airport Road, Fall River, Massachusetts 02720.

21.     The Foundation, owner of the vessel, filed and served its claim to the NOBSKA and answered the United States' complaint. Clerk's file, Docs. No. 10 and 11.

22.     In accordance with Supplemental Admiralty Rule C(4) of the Federal Rules of Civil Procedure, a "Notice of Arrest of Vessel" was duly published in the Boston Herald on April 15, 17, and 18, 2005, and in The Boston Globe on April 16, 17 and 18, 2005. Ex. C, Attach. 27. Said notices, as well as the Warrant of Arrest, required that any person having a claim against the vessel file a claim with the Court not later than ten (10) days after publication of the Notice.

23.     The deadline for filing the foregoing verified statement of right or interest has expired. With the exception of the Foundation, acting on behalf of the NOBSKA, no person or entity has filed a claim or intervened in this action. Accordingly, the United States applied for an entry of default against third parties. Clerk's file Doc. No. 16.

6

24.    No person or entity, including the Foundation, has appeared for the purpose of filing a bond or stipulation for value to obtain the release of the NOBSKA in accordance with the procedures authorized by Supplemental Admiralty Rule E(5) of the Federal Rules of Civil Procedure.  Clerk's file.

25.    On information and belief, the Foundation has no ability to secure its release due to lack of funds.

26.    Following arrest of the vessel, custodia legis fees have accrued and will continue to accrue in the amount of at least $750 per day, said expenses having been borne, to date, solely by the United States.  Ex. C, ¶ 19.

27.    The U.S. Navy has scheduled the USS CONSTITUTION, permanently berthed at Charlestown Navy Yard as part of Boston National Historical Park, to undergo repairs in Dry Dock No. 1.  The USS CASSIN YOUNG, a World War II destroyer berthed at the Navy Yard as well, needs to enter the dry dock to sandblast and paint the hull.  Finally, the dry dock is itself in need of critical repairs and safety improvements.

B.    THE UNITED STATES HAS ESTABLISHED A MARITIME LIEN UNDER
      THE MARITIME COMMERCIAL INSTRUMENTS AND LIENS ACT,
      46 U.S.C. APP. §§ 31301-43.

Members of the Foundation planned to refit the NOBSKA so that it might sail again.  Looking for a place to work on it, they spoke with the superintendent of the NPS's Boston National Historical Park, who on June 17, 1996, agreed to allow the Foundation to

use Dry Dock No. 1, at no cost, for a year, with an option to extend that period up to five years.  Statement of Material Facts of Record, ¶ 2.  The NPS allowed the NOBSKA to remain for the full five-year term.  Id.  The Agreement required the removal of the NOBSKA within sixty days of its expiration.  Id., ¶ 5.  And, on May 22, 2001, the NPS wrote to the Foundation to ask that the NOBSKA be removed by August 16, 2001.  Id., ¶ 6.

A year later, the Foundation was out of money and the NOBSKA remained in the dry dock.  Given the Foundation's apparent lack of funding, the NPS suggested that it abandon Nobska to the government, which would bear the cost of its removal.  Id., ¶ 7. The Foundation rejected that idea.  Id., ¶ 8.  In March 2003, the NPS again asked that the vessel be removed.  Id., ¶ 9.

Taking a different approach, on May 5, 2003, the NPS threatened impoundment of the NOBSKA.  Id., ¶ 10.  In response, the Foundation stated, in July 2003, that it would continue to seek the $2 million it estimated would be necessary for removal.  Id., ¶ 11. On August 4, 2003, the NPS declared the NOBSKA impounded and began to assess a storage fee of $750 per day.  Id., ¶ 12.  The Foundation did not contest the fee, nor did it do anything to move the NOBSKA.

Work on the NOBSKA has been at a standstill since 2001.  Id., ¶ 16.  It is in a state of absolute disrepair.  Id.  It cannot stay in the dry dock, which the NPS needs to make available to the USS CONSTITUTION and the USS CASSIN YOUNG.  Id., ¶ 27.

8

Before it can do so, the NPS needs to repair the dry dock itself.  Id.  Because Foundation members will not accept the fact that there is no money to finish the job, the NOBSKA continues to tie up the dry dock.

The general maritime law, through the assertion of a maritime lien and sale of the vessel, offers a mechanism by which the United States may gain control of the NOBSKA to effect its removal.  Within the complaint, the United States asserted the existence of a maritime lien based on general maritime law, specifically, the Maritime Commercial Instruments and Liens Act ("MCILA"), 46 U.S.C. app. §§ 31301-43.  Compl., ¶¶ 15-16. The MCILA states in pertinent part:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner--
>
> (1) has a maritime lien on the vessel;
>
> (2) may bring a civil action in rem to enforce the lien; and
>
> (3) is not required to allege or prove in the action that credit was given to the vessel.
>
> (b) This section does not apply to a public vessel.[2]

46 U.S.C. app. § 31342(a) (2005).  Thus, to obtain a maritime lien, a plaintiff must:  (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent.  Id. (quoting, in part, 46 U.S.C. app. §  31342).  See, e.g., Ventura Packers, Inc. v. F/V JEANINE

---

[2]      A "public vessel" is one ". . . owned, demise chartered, or operated by the United States Government or a government of a foreign country[.]"  46 U.S.C. § 30101(3).  The NOBSKA is not a public vessel.

KATHLEEN, 305 F.3d 913, 917 (9th Cir. 2002) ("If plaintiff demonstrates that he (1)

provided necessaries (2) to a vessel (3) on the order of the owner or a person authorized

by the owner, then he may bring a civil action in rem to a federal district court sitting in

admiralty."); Newport News Shipbuilding and Dry Dock Co. v. S.S. INDEPENDENCE,

872 F.Supp. 262, 266 (E.D. Va. 1994) (same).

Taking the elements in turn, it becomes apparent that the United States is entitled

to a maritime lien.  First, per the language of the statute, the provision of a dry dock to a

vessel constitutes a "necessary." 46 U.S.C. app. § 31301(4) (2005) ("necessaries includes

repairs, supplies, towage, and the use of a dry dock or marine railway;") (emphasis

added).  See also In re:  Queen Ltd., 361 F.Supp. 1009, 1013 (E.D. Pa. 1973) ("Title 46

U.S.C. § 971 sets forth 'use of dry dock' as a type of service giving rise to a lien.  This

claim should clearly be accorded lien status.")[3]

Second, the NOBSKA is unquestionably a vessel, for once completed and

launched, a vessel remains a vessel, though it might undergo repairs:

> And generally, it may be held as a principle, that, where the keel, stem,
> and stern-posts and ribs of an old vessel, without being broken up and
> forming an intact frame, are built upon as a skeleton, the case is one of an
> old vessel rebuilt, and not of a new vessel.  Indeed, without regard to the
> particular parts reused, if any considerable part of the hull and skeleton
> of an old vessel in its intact condition, without being broken up, is built
> upon, the law holds that in such a case it is the old vessel rebuilt, and not
> a new vessel.  But where no piece of the timber of an old vessel is used
> without being first dislocated and then replaced, where no set of timbers

---

[3]    The court refers to 46 U.S.C. § 971, which was repealed in 1989, coinciding with
the enactment of 46 U.S.C. app. § 31342.

are left together intact in their original positions, but all the timbers are severally taken out, refitted, and then reset, there we have a very different case. That is a case of a vessel rebuilt.

New Bedford v. Purdy, 258 U.S. at 100 (citing United States v. Grace Meade, 25 F. Cas. 1387, 1389 (E.D. Va. 1876)); Advance Welding v. M/V CORRA D, 299 F.Supp. 736, 737 (E.D. La. 1969) ("But once a vessel has been completed and launched, its status as a vessel continues even though a good part of the vessel is destroyed."); Lake Wash. Shipyards v. Brueggeman, 56 F.2d 655, 656 (W.D. Wash. 1931).

As the use of a dry dock is a "necessary" under the MCILA and the NOBSKA is a vessel, the remaining question is whether it was placed into the dry dock on order of the owner. 46 U.S.C. app. §§ 31341-31342. In fact, the owner of the NOBSKA entered into a contract to put the NOBSKA into the NPS dry dock. Statement of Material Facts, ¶ 2. The last element is met.

As the elements of the MCILA are satisfied, the United States asks that the Court order judgment in its favor against the NOBSKA and its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel, outfit, tools and other equipment, and all other appurtenances, etc. thereto, for all sums due and owing and for care and preservation costs paid by the plaintiff after the date of the commencement of this action, for reasonable attorneys' fees, and for the costs of this suit incurred herein.[4]

---

[4]    The NPS, as substitute custodian, claims fees of $750 per day since the arrest.

<u>Conclusion</u>

The United States moves the Court to grant its motion for summary judgment

recognizing its maritime lien against the NOBSKA in the amount of $214,813.67.  There

is no genuine issue of material fact and the United States is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c).

Dated:  June 10, 2005.

                       Respectfully submitted,

                       PETER D. KEISLER
                       Assistant Attorney General

                       MICHAEL J. SULLIVAN
                       United States Attorney

                       ANITA JOHNSON
                       Assistant U.S. Attorney


                       <u>/s/Michael A. DiLauro            </u>
                       MICHAEL A. DILAURO, Trial Attorney
                       U.S. Department of Justice
                       Post Office Box 14271
                       Washington, D.C. 20044-4271
                       Tel. (202) 616-4019
                       Fax (202) 616-4159
                       Counsel for the United States

OF COUNSEL:

Anthony R. Conte, Esq.
Regional Solicitor
U.S. Department of the Interior
Office of the Solicitor
One Gateway Center, Suite 612
Newton, MA 02458-2802

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of June, 2005, a copy of the foregoing

was forward via FedEx to the following:

> Joseph P. Quinn, Esq.
> Little Medeiros Kinder Bulman & Whitney PC
> 72 Pine St.
> Providence, RI 02903
> Tel. (401) 272-8080
>
>
> /s/Michael A. DiLauro
> MICHAEL A. DILAURO, Trial Attorney

13

# EXHIBIT A



**SouthCoast**
TODAY

# Nobska sits, waits for Renaissance

*Gordon Burgo, Standard-Times Correspondent*

It was around quarter to 6 on a sultry Saturday evening back in the Eisenhower era and the steamboat Nobska was getting ready to get under way. A tremendous blast of her horn marked the moment for departure and put all aboard in a slight state of momentary shock.

We were headed on a course (and were spared the view of the dike, as it wasn't yet built) that afforded us the once beautiful view of Falmouth and Buzzards Bay. The cruise included a band and everyone was getting ready to set the mood. The temperature was in the 90s and you could feel your shirt sticking to your skin, but relief was on the way.

When we got out of the harbor the temperature dropped a good 8 degrees and I put my handkerchief away after a last swipe of the brow. We were on course to the Cape Cod Canal with the band playing a Fats Domino tune, "Yes It's Me and I'm in Love Again." The people were dancing the night away, with a mood relaxer, as the bar was open and all attitudes were remedied.

The Nobska would return at midnight, with satisfaction guaranteed.

The big, bright white side of the steamboat was always impressive as you boarded, and the cool breeze was always welcome. The people you met on board were always interesting, coming from all points of the globe. Some even became good friends and entertained the thought of keeping in touch after the trip.

Everyone was always in a joyful mood, after being pampered by the captain and crew. For it was more the boat than the destination that had you in fascination for more than two hours, and the thoughts that you had by watching every wave cross her bow -- some were dreamy, some sad, some that were meant to be thought about on the way back.

Those were the "good ol' days" for the Nobska. Now she sits in New Bedford Harbor waiting for a ticket to ride, in the form of support from New Bedford citizens and funds to maintain her so that she, too, can experience the New Renaissance that must occur in our city.

David G. Pritchard is president and CEO of the New England Steamship Foundation, which operates the Nobska. I reached him by phone at Edgartown on the Vineyard. I found him to be very cooperative. I explained that I write about endangered items of historical interest, and he assured me that the Nobska qualifies.

When I met Mr. Pritchard at his office at the Whaling Museum a few days later, I was mainly interested in boarding the Nobska, berthed at Commonwealth Pier. Mr. Pritchard seemed like a man possessed in preserving the Nobska, as I can justly understand, being a boat person myself. He had a kind of earnestness in his voice that made you pay particular attention to every word he uttered. He seemed confident and excited about the Nobska's potential.

We went dockside to the Nobska and she was sitting there, all alone in her slip. She was still a grand sight. Mr. Pritchard opened wide the door and made a plank entry boardwalk. We went on board and it was like boarding a huge sleigh.

It was empty, void of anything that would remind you of the Nobska of old. I asked Mr. Pritchard if the area we boarded was the car storage area. He said it was, but with one exception: It was also the livestock area. Livestock were delivered to the islands and butchered there. We removed a heavy vinyl tarp covering the engine and discovered the engine was 14 feet long with large pistons -- quite a sight. It looked like it might be ready for another voyage, with its four-cylinder, triple-expansion, 1,200-horsepower engine. Mr. Pritchard explained how everything was going to be gutted and replicated as close as possible to what it was in its heyday, when she and vessels of her dignity provided elegance to all passengers no matter who you were. For when you went on a steamboat in those days, you were treated as Lord and Master.

**Exhibit A**

He explained to me that it would strictly be a day-cruise boat with scheduled stops in Martha's Vineyard (Oak Bluffs - - I still remember the brass ring), Nantucket and New Bedford. It would also offer food service. Autos and livestock would no longer be taken, and that area would be converted to dining space for breakfast and lunch and a light offering for the evening return.

The Nobska would also be based in Providence and operate as a "Museum of the American Coastal Steamship." There would be lectures on the industrial revolution, lifestyles of the 19th and early 20th centuries and seminars for college-level students in subjects ranging from mechanical engineering to marine design as reflected in the age of the coastal steamship. So, in essence, the Nobska would be an adventure in nautical education related to the ship itself. It would also be available for functions and other special events and conventions.

I had asked Mr. Pritchard to relate to me some of the particular stories that this vessel had hidden in her hold. He told me of when she was involved in World War II and German U-boats were shooting torpedoes at the ship. Direct hits should have been scored but, because of the Nobska's shallow draft, the torpedoes went under the ship, leaving the U-boat commanders stymied as they could not figure how a ship with such a shallow draft had made it across the Atlantic.

He also told me of another role the ship played, that of a hospital ship in the Normandy invasion. The story goes that a young New Bedford soldier who was wounded and brought to the hospital ship started to hallucinate. He thought he was home.

The Nobska was named after the light that guarded the entrance to Woods Hole for more than a century and a half. Today the "Grand Lady" lies silent and her engines dormant. Today she is a burdening lady.

Should we let her die like the Puritan, or the Pilgrims, or the Commonwealth, or our constant reminder, the Morgan?

I think not.

I hope not.

Not this time.

---

Please mail any comments to Newsroom@S-T.com

This page has been accessed [×] times.

**new** Standard

# EXHIBIT B

Providence Journal-Bulletin (Rhode Island) July 22, 1996, Monday,

4 of 4 DOCUMENTS

Copyright 1996 The Providence Journal Company
Providence Journal-Bulletin (Rhode Island)

July 22, 1996, Monday, MASSACHUSETTS EDITION

**SECTION:** NEWS, Pg. 1C

**LENGTH:** 618 words

**HEADLINE:** Renovation of Nobska is sailing along;
Despite some weather delays, the ferry is expected to be ready by August 1998, right on schedule.

**BYLINE:** PIA SARKAR; Journal-Bulletin Staff Writer

**BODY:**

The extensive renovations needed to get the S.S. Nobska back into service as a ferry are well under way.

"Everything has been going along very well," said David G. Pritchard, president of the Friends of Nobska, a nonprofit organization of 850 members.

The three-story historical steamship is being primped for tourists to come aboard and cruise from New Bedford to Martha's Vineyard, Nantucket or Cape Cod.

Since April, the Nobska has been dry-docked beside the U.S.S. Constitution in the Charlestown Navy Yard, which is part of the Boston Historical Park.

The --Nobska already has been stripped of the brick dust ballast that had hidden its frames and keel for years, Pritchard said.

"We had a very tough time removing it," he said, noting that the process took more than three weeks.

The ship's rudder - which had been bent while in Baltimore in the mid-70s when the Nobska was a floating restaurant - is also being replaced, Pritchard said.

The next step, he said, is to assess the ship's structure frame by frame so the American Bureau of Shipping can then classify the vessel.

"There is significantly more work to do," Pritchard said, but "it's not beyond what we expected."

"There isn't a thing that can't be fixed," he added.

Students from the New Bedford Vocational Technical High School will get a piece of the action as well. The Nobska's main engine has been removed and shipped out to the school for dismantling, analysis and repair.

The students will be guided by teachers as well as by the Nobska's last chief engineer, Joseph Dawicki, who now serves as the senior chief engineer for the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.

The entire project is expected to be completed by late August of 1998, Pritchard said. Construction had slowed down for a little while because of poor weather conditions, he said, but the work is now back on schedule.

The cost to rebuild the Nobska should run between $ 8.5 million to $ 9 million, Pritchard said. The New England Steamship Foundation, which owns the ship, is currently working within a $ 3 million budget supplied by the state. The rest of the money is to be raised from the federal government and private donations.

**Exhibit B**

Providence Journal-Bulletin (Rhode Island) July 22, 1996, Monday,

Pritchard said he hopes the vessel can retain its dock at the Charlestown Navy Yard after its one-year contract expires.

"My best guess is that we will complete the project there," he said.

The 271-foot ferry had previously been docked at the Com Electric Pier in New Bedford for almost a year, spending six years at India Point Park in Providence before that.

Named for Nobska Light, a Cape Cod lighthouse, the ship was designed by the New England Steamship Co. in Newport and built at Bath Ironworks in Maine. It was launched in 1925 and sailed the islands for nearly 50 years.

From 1925 to 1973, it served as a ferry for the islands before it was deemed too old for service and decommissioned by the Steamship Authority. In 1974 it was sold to a Baltimore businessman. There, it housed a waterfront restaurant, which failed after several years.

In 1975, the Friends of Nobska was established to salvage the ship. In 1988, the Friends bought the boat for $ 250,000 and towed it to Providence.

Once the renovations are completed, the Nobska will run daily trips to the islands from May 15 through Columbus Day weekend. Leaving its summer home port of New Bedford in the morning, it will make stops with long layovers at Martha's Vineyard and Nantucket before returning home at night. It will carry about 960 people a day, for a total of 145,000 passengers a year.

The steamship will spend the winters in Providence, where it will serve as a floating museum.

**GRAPHIC:** Photo: SEAWORTHY: The oldest of her kind, the steamship Nobska is undergoing a major renovation in the dry dock at the Charlestown Navy Yard. At right, a welder removes a section of the hull plating that needs replacement. The estimated $ 9 million renovation is expected to be completed by fall 1998 when the Nobska will call New Bedford its home port and begin a new career as a ferry for tourists to Cape Cod and the islands. Special to the Journal-Bulletin, NORM SYLVIA

**LOAD-DATE:** July 23, 1996

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-10507 |
| | ) | |
| v. | ) | |
| | ) | |
| SS NOBSKA its engines, boilers, | ) | |
| lockers, cables, chains, tackle, fittings | ) | |
| and spare parts, apparel, outfit, tools | ) | |
| and other equipment, and all other | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MR. DAVID BROUILLETTE

DAVID BROUILLETTE, for his declaration pursuant to 28 U.S.C. ' 1746, states as follows:

1.    I am employed by the United States Department of the Interior, National Park Service ("NPS") as Deputy Superintendent of the Boston National Historical Park, a unit of the National Park System located in the city of Boston, Massachusetts.  In my capacity as Deputy Superintendent, I am responsible for all aspects of the administration of the Boston National Historical Park, including the authorization of the use of park property.

2.    By Lease Agreement 1443AG1720-96-005 ("Agreement") dated June 17, 1996, the NPS's Boston National Historical Park, a unit of the National Park System located in the city of Boston, Massachusetts, agreed to allow The New England Steamship Foundation ("Foundation") to use Dry Dock No. 1, at no cost, to refurbish the NOBSKA for a period of one year, with an option to extend upon mutual agreement for additional one year periods, not to exceed a total of five (5) years.  Attach. 1, p. 4.  This

**Exhibit C**

Agreement was ultimately extended for the full term, until June 17, 2001. Attach. 2-4.

    3.    The Agreement required that the Foundation maintain comprehensive general liability insurance, naming the United States as an additional insured party, throughout the term of the Agreement. Attach. 1, pp. 3-4.

    4.    The Agreement further required that the Foundation remove the NOBSKA from the dry dock within sixty days of its expiration. Attach. 1, pp. 5-6.

    5.    By letter dated May 22, 2001, the NPS asked the Foundation to remove the NOBSKA by August 16, 2001. Attach. 5.

    6.    On November 12, 2002, Mr. Terence Savage, the superintendent of the Boston National Historical Park, met with the Foundation president, Mr. Arthur Flathers, told him that the NPS could not allow the NOBSKA to occupy the dry dock indefinitely and asked him to consider having the Foundation abandon the vessel to the NPS.

    7.    In February 2003, the Foundation rejected the idea of abandonment. Attach. 6.

    8.    The NPS, by letter of March 31, 2003, explained that it was "essential that the NOBSKA be removed from the dry-dock." Attach. 7.

    9.    On May 5, 2003, the NPS notified the Foundation that it would impound the NOBSKA pursuant to 36 C.F.R. § 2.22(b)(1), that the said vessel should be considered abandoned property pursuant to 36 C.F.R. § 2.22(c) and subject to disposal, unless claimed and removed with sixty (60) days of receipt of the letter. Attach. 8.

    10.    On July 7, 2003, the Foundation again stated that it would seek funding for the removal of the NOBSKA, which it stated would cost ". . . approximately $2 million and [would] take 3-4 months." Attach. 9.

    11.    On August 4, 2003, the NPS notified the Foundation that the NOBSKA was impounded pursuant to 36 C.F.R. § 2.22(b)(1), would be considered abandoned property pursuant to 36 C.F.R. § 2.22(c) and would be subject to disposal unless claimed within 60 days of receipt of that letter. The NOBSKA was assessed an impoundment and storage fee of $750 per day payable weekly effective July 14, 2003. Attach. 10.

    12.    The Foundation wrote to the NPS on August 25, 2003, admitting that it had ". . . seriously overstayed its original commitment . . . ." Attach. 11.

13.    Subsequently, the NPS believed it reached an agreement to buy the NOBSKA for $1.00. Attach. 12 and 13.

14.    The Foundation did not follow through with the sale. Attach. 14.

15.    The NOBSKA has occupied Dry Dock No. 1 since 1996, during which time the Foundation did not restore the vessel, make it seaworthy, or even floatable. No work has occurred since early 2001. It is high and dry, is without a crew, has no cargo aboard and its machinery will not operate. The attached photographs fairly and accurately depict the NOBSKA's condition on September 29, 2003, and October 3, 2003. Attach. 15-25. The vessel has continued to deteriorate since they were taken.

16.    Following the expiration of the Agreement, the United States has continued to provide dry dock facilities to the NOBSKA. While the complaint asserts a lien of $214,813.57, it now appears that this figure is too low.

17.    The NPS sent letters captioned "NOTICE OF INTENT TO COLLECT A DEBT," most recently on April 26, 2005. As of that date, the total amount claimed as due by the NPS was $502,063.97. Attach. 26.

18.    The NPS published a Notice of Vessel Arrest in the Boston Herald on April 15, 17, and 18, 2005, and in The Boston Globe on April 16, 17, 18, 2005. Attach. 27. No person or entity has contacted the NPS to assert a claim against the vessel.

19.    Following arrest of the vessel, custodia legis fees have accrued and will continue to accrue in the amount of at least $750 per day, said expenses having been borne, to date, solely by the United States.

20.    The U.S. Navy has scheduled the USS CONSTITUTION, permanently berthed at Charlestown Navy Yard as part of Boston National Historical Park, to undergo repairs in Dry Dock No. 1. The USS CASSIN YOUNG, a World War II destroyer berthed at the Navy Yard as well, also needs to enter the dry dock to sandblast and paint the hull. Finally, the dry dock is itself in need of critical repairs and safety improvements.

21.    The documents attached are true copies of original records that were made at or near the time of the occurrence of the matters set forth therein by a person with knowledge, or from information transmitted by a person with knowledge, of those matters and kept in the ordinary course of regularly conducted business activity. They are also records of the NPS that set forth its activities.

3

JUN-09-2005 16:41          95%          P.05

I declare under penalty of perjury that the foregoing is true and accurate this ⁷

day of _____June_____ 2005.

_____
**DAVID BROUILLETTE**
Deputy Superintendent
Boston National Historical Park

4

**ATTACHMENT 1**

AGREEMENT
1443AG1720-96-005


BETWEEN


U.S. DEPARTMENT OF THE INTERIOR

NATIONAL PARK SERVICE

AND

THE NEW ENGLAND STEAMSHIP FOUNDATION


**Attachment 1**

Agreement
1443AG1720-96-005
Between
U.S. Department of Interior
National Park Service
Boston National Historical Park
And
The New England Steamship Foundation


Article I - Background, Objectives and Authority:

This Agreement is dated _____, 1996 and is by and between the
Department of the Interior, National Park Service, (NPS) at Boston
National Historical Park and The New England Steamship Foundation
(FOUNDATION) is entered into by authority of:

      --   16 USC §§ 1a-2(g), 3
      --   Public Law 93-431, as amended, dated October 1,
            1994

The NPS has been working with various organizations that provide
programs and services that are consistent with the PARK's mission and
would provide visitors an experience of ship building.  The
FOUNDATION has been established as a non-profit corporation for the
general purpose of preserving and promoting the study of coastal
steamship history and lore and for the restoring to operation the
tall-stacked steamship S.S. Nobska.  Providing use of the PARK's dry
dock will provide the public with an opportunity to observe the manner
in which a historic steel vessel is reconstructed.  The objectives of
the of this Agreement are:

      --    To Establish the purpose and responsibilities of
           both parties;

      --    To specify and delineate space and equipment to
           be provided;

Article II - Statement of Work:

A.   The FOUNDATION agrees to:

   (a)   Make use of Dry Dock #1 at the Charlestown Navy Yard and
       designated facilities for the purpose of restoring the

1443AG1720-96-005
THE    NEW    ENGLAND
STEAMSHIP FOUNDATION

historic steamship S.S. Nobska for a period of no longer than twelve (12) months from date of this agreement to perform work (which the FOUNDATION anticipates to be completed) during this period consisting of the following:

1. Engineering for Phase I (Hull Envelope) and Phase II (Engine Room)

2. Lead Abatement - Entire ship
   Testing
   Containment Systems
   Removal and disposal

3. Hull point testing

4. Rehabilitate hull envelope
   Hull plating
   Lower (Engine & Boiler Room) deck
   Main Deck
   Water-tight Bulkheads

5. Inspect and repair engine shaft and mechanical systems including rudder

6. Inspect, repair and replacement of structural steel and framing

7. Boiler Systems critical path timeline developed

(b) Assure all work done will meet OSHA and EPA requirements, including requirements for work done in high-traffic locations to protect both workers and the public-at-large. Require all outside contractors to provide certification that they carry applicable insurance coverage naming the United States of America as a co-insured to protect the United States from any liability claims as well as workman's compensation and assure that all necessary permits and licenses required are obtained; and

(c) Be responsible for the coordination and general management of the ships restoration, including all aspects of visitor and worker safety within the area occupied by the Foundation and/or its contractors, agents or employees, taking in consideration the Park's programs and visitors including any and all prime and subcontractors hired by the FOUNDATION to perform work; and

2

1443AG1720-96-005
THE    NEW    ENGLAND
STEAMSHIP FOUNDATION

(d)  Close the vessel to the public during the first sixty (60) days.  During which all ballast would be removed by vacuum process (non-toxic dust) and removed from site.  Perform survey and remove all wasted plates and plating from the ship and Park.  Provide a complete containment system around the ship during the de-leading process.  Such de-leading shall be done by a qualified contractor using methods approved by both OSHA and EPA; and

(e)  Develop a plan for selective public access to the vessel during the reconstruction which will allow the public to safely see portions of the ship which have deteriorated, construction underway, and construction completed; and

(f)  Wherever possible, shall grant the NPS the right of access to all portions of the site under its control at all reasonable times (provided that such access does not interfere with or restrict the restoration process or create unsafe conditions); and

(g)  Permit the NPS to provide interpretive services in the vicinity of the vessel.  The location of physical facilities, if any, for interpretation is subject to approval by the FOUNDATION; and

(h)  Assume all responsibility and costs for the restoration and removal of the S.S. Nobska from the dry dock due to funding inability to complete any Phase of the project within the period required by this Agreement; and

(i)  Prior to the effective date of this agreement, provide the Superintendent with a Certificate of Insurance evidencing that it has obtained and will maintain during the term of this agreement Comprehensive General Liability insurance against claims occasioned by the actions or omissions of the FOUNDATION, its agents and employees in carrying out the activities and operations authorized hereunder.  Such insurance shall be in an amount commensurate with the degree of risk and the scope and size of such activities authorized hereunder, but in any event, the limits of liability shall not be less than $1,000,000.00 per occurrence.  If claims reduce available insurance below the required per occurrence limits, the FOUNDATION shall obtain additional insurance to restore the required limits.  An umbrella or excess liability policy, in addition to a Comprehensive General Liability Policy, may be used to achieve the required limits.  All liability policies shall either name the United

1443AG1720-96-005
THE    NEW    ENGLAND
STEAMSHIP FOUNDATION

3

States of America as an additional named insured or shall specify that the insurance company shall have no right of subrogation against the United States and shall have no recourse against the Government for payment of any deductibles, premiums or assessments.

(j)   Exercise rights under this agreement in accordance with the regulations and policies of the NPS and Secretary of the Interior; and

(k)   Cooperate in the common goal of protecting and preserving the historical integrity of the Park; and

(l)   Include the Park in all publications regarding the vessel's rehabilitation which describes the NPS (other than simply referring to the location of the vessel without identifying the dry dock as NPS property) and shall submit for review and approval all such materials. Will notify and coordinate, with the PARK, all special events regarding the Nobska's rehabilitation to be held in the Park or the Boston area.

B.   The NPS agrees to:

(a)   Make available to the FOUNDATION the dry dock for the purpose of restoring the S.S. Nobska and other facilities as requested; and

(b)   Take primary responsibility for the operation of the dry dock mechanism; and

(c)   Provide the FOUNDATION metered electric service for use during the restoration.

C.   It is understood that no funds are obligated by this agreement.

## Article III - Term of Agreement:

The term of this Agreement shall be for a period of one (1) year from the date of signing by both parties. Upon mutual agreement by both parties, this agreement may be extended for additional one year periods not to exceed a total of five (5) years.

## Article IV - Key Officials:

A.   The key contacts for the NPS are:

1443AG1720-96-005
THE   NEW   ENGLAND
STEAMSHIP FOUNDATION

4

John J. Burchill
Superintendent, 242-5644

David Rose
Chief of Maintenance, 242-5605

Peter A. Promutico
Administrative Officer, 242-5640

B.    The key contact for the FOUNDATION is:

David G. Pritchard
President & CEO, (508) 627-6264

Jake Koopman, 242-5681

## Article V - Liability:

The FOUNDATION AGREES:

A.    To pay the Government the full value for all and any damages to the lands or other property of the Government caused by such person(s) or organization(s), its representatives, or employee; and

B.    That this agreement is made upon the express condition that the United States of America, its agents and employees shall be free from any and all liabilities and claims for damages and/or suits for or by reason of any injury to any person or property of any kind whatsoever, whether to the person or property of the FOUNDATION or third parties, from any cause whatsoever arising from any activities conducted pursuant to the terms of this Agreement, and the FOUNDATION hereby covenants and agrees to indemnify, defend, save and hold harmless the United States, its agents and employees from all such liabilities, expenses and costs on account of or by reason of any such injuries, deaths, liabilities, claims, suits or losses however occurring or damages arising out of the same.

## Article VI - Termination:

A.    If either party fails to material and adverse degree observe any of the terms and conditions of this Agreement, the other party may terminate this Agreement for default without any legal process whatsoever by giving sixty (60) days written notice of termination, effective at the end of the sixty (60) day period.  Upon termination or expiration of this Agreement, the FOUNDATION shall remove within such reasonable period as is determined by the Superintendent, but not to exceed sixty (60) days from date of termination or expiration, all

1443AG1720-96-005
THE    NEW    ENGLAND
STEAMSHIP FOUNDATION

items stored in the space provided and shall restore the space to its former condition.

B.   The Government may terminate this Agreement for the convenience of the Government, at any time, when it is determined to be in the best interest of the public to do so.

Article VII - Required Clauses:

A.   NON-DISCRIMINATION:  All activities pursuant to this Agreement and the provisions of Exec. Order No. 11246, 3 C.F.R. 339 (1964-65) shall be in compliance with the requirements of Title VI of the Civil Rights Act of 1964 (78 Stat. 252; 42 U.S.C. 2000d et seq.); Title V, Section 504 of the Rehabilitation Act of 1973 (87 Stat. 394; 29 U.S.C. 794); the Age Discrimination Act of 1975 (89 Stat. 728; 42 U.S.C. 6101 et. seq.); and with all other Federal laws and regulations prohibiting discrimination on grounds of race, color, national origin, handicap, religious or sex in providing for facilities and service to the public.

B.   PUBLIC LAWS:  Nothing herein contained shall be deemed to be inconsistent with or contrary to the purpose of or intent of any Act of Congress or the laws of the District establishing, affecting, or relating to the Agreement.

C.   APPROPRIATIONS: This Agreement and the obligations of the NPS hereunder are subject to the availability of fund, and nothing contained in this Agreement shall be construed as binding the Government to expend in any one fiscal year any sum in excess of appropriations made by Congress, and available for the purposes of this Agreement for that fiscal year, or as involving the Government in any contract or other obligation for the further expenditure of money in excess of such appropriations.

D.   DIRECT BENEFIT CLAUSE:  No member of, Delegate to, or Resident Commissioner in, Congress shall be admitted to any share or part of this Agreement or to any benefit to arise therefrom, unless the share or part or benefit is for the general benefit of a corporation or company.

E.   PUBLIC LAWS:  Nothing herein contained shall be deemed to be inconsistent with or contrary to the purpose of or intent of any Act of Congress or the laws of the District establishing, affecting, or relating to the Agreement.

Article VIII - General Provisions:

1443AG1720-96-005
THE    NEW    ENGLAND
STEAMSHIP FOUNDATION

6

A.  Public Information Release:  The FOUNDATION must obtain prior
Government approval from the Superintendent, Boston National
Historical Park for any public information releases which refer to the
Department of the Interior, any bureau, park unit, or employee (by
name or title), or this Agreement.  The specific text, layout,
photographs, etc., of the proposed release must be submitted with the
request for approval.

B.  This Agreement shall be subject to the laws and regulations
governing the NPS, whether now in force or hereafter enacted or
promulgated; and nothing herein shall be construed as in way impairing
the general powers of supervision, regulation and control by the NPS.

C.  Neither this Agreement nor anything contained herein shall
constitute an endorsement of the FOUNDATION or as creating any agency
relationship in any manner between the parties hereto nor is there any
intent by the parties to establish such a relationship by executing
this Agreement.

Article IX - Authorizing Signatures:

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be
executed by their respective duly authorized officers or
representatives:

THE NEW ENGLAND STEAMSHIP FOUNDATION

By:_____     Date:_June 26, 1996_
      David G. Pritchard
      President & Chief Executive
        Officer

NATIONAL PARK SERVICE
BOSTON NATIONAL HISTORICAL PARK

By:_____     Date:_JUN 1 7 1996_
      John J. Burchill
      Superintendent


                                        1443AG1720-96-005
                                        THE   NEW   ENGLAND
                    7                   STEAMSHIP FOUNDATION

**ATTACHMENT 2**



# United States Department of the Interior

NATIONAL PARK SERVICE
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

IN REPLY REFER TO:

November 20, 1997

A44 (BOST-A)
1443AG1720-96-005

Mr. John Aylmer
President & Chief Executive Officer
The New England Steamship Foundation
P.O. Box 5160
Edgartown, Massachusetts 02539

LETTER TIME EXTENSION #1

Dear Mr. Aylmer:

This letter is to provide for a no cost time extension for the continued use of Dry Dock #1 by the New England Steamship Foundation for the repair of the S.S. Nobska under Agreement No. 1443AG1720-96-005. Your time extension is from June 18, 1997 through June 17, 1998.

Please acknowledge your acceptance of these terms by signing both copies where provided and returning one copy to this office Attention: Chief of Administration.

Should you have any questions, feel free to contact me at (617) 242-5640.

Sincerely,

Peter A. Promutico
Chief of Administration

*********************************************

The terms of this no cost time extension is hereby accepted with all other terms and conditions of the Agreement remaining unchanged.

By: _____     Date: 6 January 1998.

**Attachment 2**

**ATTACHMENT 3**



# United States Department of the Interior

NATIONAL PARK SERVICE
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

IN REPLY REFER TO:

October 28, 1998

A44 (BOST-A)
1443AG1720-96-005

Mr. John Aylmer
President & Chief Executive Officer
The New England Steamship Foundation
63 Union Street
New Bedford, Massachusetts 02740

LETTER TIME EXTENSION #2

Dear Mr. Aylmer:

This letter is to provide for a no cost time extension for the continued use of Dry Dock #1 by the New England Steamship Foundation for the repair of the S.S. Nobska under Agreement No. 1443AG1720-96-005. Your time extension is from June 18, 1998 through June 17, 2000.

Please acknowledge your acceptance of these terms by signing both copies where provided and returning one copy to this office Attention: Chief of Administration.

Should you have any questions, feel free to contact me at (617) 242-5640.

Sincerely,

Peter A. Promutico
Chief of Administration

*****************************************************

The terms of this no cost time extension is hereby accepted with all other terms and conditions of the Agreement remaining unchanged.

By: _John F. Aylmer_    Date: _16, November 1998_

**Attachment 3**

**ATTACHMENT 4**

DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE

**EFFECTIVE DATE:** June 18, 2000                    **THROUGH:** June 17, 2001

**MODIFICATION NO.:** 1                    **GENERAL AGREEMENT NO.:** 1443AG1720-96-005

**COOPERATOR:**        New England Steamship Foundation
                      63 Union Street
                      New Bedford, Massachusetts 02740

**PROJECT TITLE:** Restoration of a historic steamship, S. S. Nobska

**FISCAL YEAR FUNDING:** No funds allocated

A.  The Scope of Work for the above-entitled project under the subject General Agreement is as follows:

1.  Article III – Term of Agreement: The term of the Agreement is being extended from June 18, 2000 to June 17, 2001 for completion of the work.

2. Article IV – Key Officials: Following changes are made:

    a. NPS Officials: Remove John J. Burchill and insert Peter Steele as Acting Superintendent
       Remove Dave Rose and insert Marcy Beitel as Acting Chief of Maintenance

    b. Foundation Officials: Remove David G. Pritchard and insert ~~John Aylmer~~  ARTHUR E. FLATHERS

B.  All other terms and conditions of the Agreement remains unchanged.

C.  This Modification is subject to all Provisions included in the General Agreement #1443AG1720-96-005 dated June 17, 1996.

**NEW ENGLAND STEAMSHIP FOUNDATION**            **U.S. DEPART OF THE INTERIOR**
                                               **NATIONAL PARK SERVICE**

Signature: _____            Signature: _____
ARTHUR E. FLATHERS ~~John Aylmer~~                          Peter Steele
        President ~~& CEO~~                                 Acting Superintendent,
                                                           Boston National Historical Park

Date: ___JUNE 27, 2000___                       Date: ___JUNE 30, 2000___

**Attachment 4**

# ATTACHMENT 5

May 22, 2001

K18 (BOST)

Mr. Arthur E. Flathers, President
The New England Steamship Foundation
Sundial Building
63 Union Street
New Bedford, Massachusetts 02740

Dear Mr. Flathers:

This letter is to formally notify you of National Park Service needs for Dry Dock 1 at the
Charlestown Navy Yard which will require the New England Steamship Foundation to
remove SS NOBSKA from the dry dock, under terms of Agreement No. 1443AG1720-
96-005.

In June, 1996 Boston National Historical Park and the New England Steamship
Foundation entered into an agreement permitting SS NOBSKA to utilize Dry Dock 1 for
preliminary rehabilitation work such as repairing the hull envelope and repairing
structural steel and framing, so that SS NOBSKA could ultimately be returned to service
as an operating museum ship. The agreement was for a term of one year, with the
possibility, upon mutual agreement, to extend the agreement for one-year periods not to
exceed a total of five years.

We are pleased that the National Park Service has been able to provide a home and
substantial support to SS NOBSKA over that five-year period. National Park Service
agreement for SS NOBSKA to use the dry dock has allowed maximum utilization of the
project's public funds to accomplish essential ship rehabilitation work rather than to pay
for facility overhead costs. While SS NOBSKA has occupied the dry dock, without
charge, for almost five years, the cost of occupying a commercial dry dock during that
time is estimated to be in the range of $3.6 million. Indeed, most of the hull envelope
work as well as other needed repairs have been accomplished.



REGIONAL SOLICITOR
RECEIVED

MAY 2 4 2001

U.S. DEPT. OF THE INTERIOR
NORTHEAST REGION

**Attachment 5**

A variety of critical needs related to the dry dock have now arisen and need to be addressed. As we have become aware of these needs, we have informed the Foundation of them in a series of meetings over the past ten months. The needs are as follows:

1. Scheduled and Emergency Use for USS CONSTITUTION. The United States Navy has scheduled USS CONSTITUTION for repairs in Dry Dock 1 in fiscal year 2007. In addition, there is growing concern that the dry dock not be occupied indefinitely, or for very long periods of time when a vessel is not in floatable condition, as is the case with SS NOBSKA. In this situation, where SS NOBSKA is unfunded for substantial repairs just to be capable of being floated out of the dry dock, the dry dock could not be available to USS CONSTITUTION on an emergency basis. Should USS CONSTITUTION be damaged, availability of the dry dock could be the difference between repairable damage and catastrophic loss of a national treasure.

2. Rehabilitation of Dry Dock 1. The dry dock itself is in critical need of repairs and safety improvements. Its walls and stone stairs are moving inward, and it is approaching a state of structural destabilization if not corrected soon. The National Park Service has identified this project for funding in the next several years.

3. Rehabilitation of USS CASSIN YOUNG. The CASSIN YOUNG is a World War II destroyer permanently berthed at the Charlestown Navy Yard as a part of Boston National Historical Park. It is open to the public as a museum ship and receives 400,000 visitors per year. This National Historic Landmark vessel requires sandblasting and repainting of the underwater hull, which has not occurred in over 20 years. The National Park Service has identified funding for this project in the next several years, and the work is scheduled to be done in Dry Dock 1.

4. FRIENDSHIP. This is a reconstruction of a 1797 three masted merchant ship which sailed from Salem, Massachusetts and is part of Salem Maritime National Historic Site. The vessel requires dry dock inspection and accomplishment of any needed repairs in order to be certified by the U.S. Coast Guard. This work is scheduled to begin on October 1 of this year, using Dry Dock 1. If the dry dock is not available, there will be additional costs of approximately $70,000 to use a commercial dry dock.

Therefore, and in accordance with Agreement No. 1443AG1720-96-005, we are notifying you to remove SS NOBSKA and all related materials from Dry Dock 1 within 60 days of the expiration of the agreement. The expiration date is June 17, 2001, and the required removal date is August 16, 2001.

We have requested from you a detailed scope of work and cost estimate, with independent verification that the scope of work is adequate to safely float and move SS NOBSKA from the dry dock. At our meeting of May 16, 2001, you committed to providing us this information by May 25, 2001.

Again, we are pleased to have been able to assist with the SS NOBSKA project for the past five years. You have accomplished some of the most difficult and important work on SS NOBSKA while in the dry dock here. We hope that with these achievements and your continuing efforts to build support, you will succeed in bringing the project to full fruition.

Sincerely,

Terry Savage
Superintendent

Bcc: Tony Conte
Steve Kesselman
Sean Hennessey
Pete Promutico

**ATTACHMENT 6**



MAIN OFFICE
Sundial Building
63 Union Street
New Bedford, MA 02740
Tel: (508) 999-1925
FAX (508) 999-0230
email: nobska@tiac.net

**THE NEW ENGLAND STEAMSHIP FOUNDATION**

Saving the S.S. NOBSKA, America's last coastal steamer

CHARLESTOWN OFFICE
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129
Tel: (617) 242-5681
FAX (617) 242-5327
www.nobska.org

February, 2003

Mr. Terry Savage, Superintendent
Boston National Historic Park

Dear Terry,

I am sorry for not having responded sooner with respect to our
November 12th meeting, and your request for disposition of the
NOBSKA. The Foundation's Trustees met in December and decided
that we should continue working toward restoration of NOBSKA,
and not consider abandoning her as was suggested by Mr. Conte.

The reasoning behind this decision was largely because both of
our organizations have made substantial investments along with
the state and federal governments. Attempting to explain why
some $3 Million of public funding was invested in an historic
vessel such as NOBSKA, and was subsequently abandoned will not
reflect favorably on either of our organizations or the public
officials who endorsed the effort. This is especially true of
Senators Kennedy and Kerry as well as Representatives McGovern,
Frank and Delahunt who have supported our efforts.

More recently we have received the strong endorsement of David
McCullough, author of John Adams, and Bill Fowler, Director of
the Massachusetts Historical Society. Fowler describes NOBSKA
as an "ikon" of the coastal steamship, that opened up scheduled
transportation at the beginning of the nineteenth century. The
steamship ushered in modern transportation as key ingredient of
nation's development and productivity in support of our economy.
In fact, productivity was sufficiently increased by industrial
revolution along with modern transportation to make Lincoln's
"of, for, and by the people" a reality through making time for
education and recreation.

The New England Steamship Foundation has designed the restored
NOBSKA to include dining and gift shop provisions that make it
an economically viable destination in addition to traveling on
coastal and inland waters. The Foundation with the support of
Packaging Trends, Ltd. and in partnership with Spirit Marine,
the world's largest dinner cruise operator and Aggreko, event
services company who staged winter Olympics in Salt Lake City
have developed concepts making NOBSKA an economic venue. This
activity has received endorsement of several government groups
and many large and small companies.

**Attachment 6**

-2-

The parallelism between transportation and technology where we have seen networking and "transport of ideas" continue pushing the envelope of knowledge is remarkable, and it began with the steam engine and steamship two centuries ago. Modern commerce owes much to humble beginnings of the coastal steamship which NOBSKA so well represents, with New York and New England where it began and developed through the formative years. Steamships provided the means of bringing textiles of New England to the garment districts and markets of New York and build an economy.

In the course of our developing concepts to display NOBSKA and the steamship, the Foundation has encountered many examples of "firsts" occurring in New England, and seen ample evidence that culture is prime ingredient of life in and around Boston. This has led the Foundation to consider how best to fit NOBSKA into this environment and at the same time extending nationally and even internationally including other forms of transportation. This has led the Foundation to this point in time where there exists a "necessity is the mother of invention" as follows.

Concomitant with our recent decision to continue an aggressive pursuit of funds toward restoring NOBSKA was the recommendation to engage the Park Service in a partnership to promote Boston's National Historic Park as historic transportation launch site. With the long history of Boston as the nation's first port and home of the Paul Revere's ride and the USS CONSTITUTION it is a natural. NOBSKA's having had sister ships participating in WWII landing at Normandy adds to a naval relation with Old Ironsides. There may even be an opportunity for some Department of Defense and other federal agency sponsorship under a legacy program.

Working with Packaging Trends, Ltd, the New England Steamship is pursuing several options for both public and private funding to restore NOBSKA, and expects significant progress in this coming year. Contact with both federal and state leadership across the country, including international interests has been encouraging. The whole idea of expositions or similar transportation venues has been heartily received and endorsed by Smithsonian Institute. The New England Steamship Foundation believes that with support of our team and the Boston Historic National Park NOBSKA can be the focus of transportation and technology venue to the benefit of the New England region and nation as a whole.

The New England Steamship Foundation would be pleased to arrange a meeting with the Boston Historic National Park and other local parties with our team at your earliest convenience. We expect to include both David McCullough and Bill Fowler as members of such a get-together, and through their personal invitation include as the lead inviter, Senator Edward Kennedy, who is personal friends with both gentlemen. We might even be able to invite arrange for participation of the National Park's leader on the new John Adams Memorial that has also been sponsored by Senator Kennedy.

Regards,

Foundation Trustees

**ATTACHMENT 7**

March 31, 2003

A44 (BOST-A)

Mr. Arthur E. Flathers, President
The New England Steamship Foundation
63 Union Street
New Bedford, Massachusetts 02740

Dear Mr. Flathers:

This is in response to your letter dated February 4, 2003 regarding the Foundation's decision to continue working toward restoration of NOBSKA and not consider abandoning her as was suggested by our Solicitor, Mr. Tony Conte. Unfortunately, your suggestion for the National Park Service to partner with the Foundation to promote Boston National Historical Park as a historic transportation launch site is unacceptable as a solution. We have clearly stated in numerous meetings and by our letter dated May 22, 2001 that it is essential that the NOBSKA be removed from the dry-dock.

The National Park Service has been cooperative and patient in working with you, however, we are left with no choice but to seek legal action for its removal. Our letter dated May 22, 2001 clearly indicated the need that the National Park Service has for the dry-dock and with the legal requirement to provide security for USS CONSTITUTION, in the present climate, it is essential that your vessel be removed. This letter also clearly notified you that upon the expiration of our Agreement that the vessel was to be removed by August 16, 2001.

The decision to take legal action was not taken lightly. However, in weighting all the facts, we have no choice. We have notified our Solicitor to begin the process and wanted to inform you of our decision.

Sincerely,



Terry Savage
Superintendent

**Attachment 7**

# ATTACHMENT 8

CERTIFIED MAIL

May 5, 2003

A44 (BOST-A)

Mr. Arthur E. Flathers, President
The New England Steamship Foundation
63 Union Street
New Bedford, Massachusetts 02740

## NOTICE OF NOTICE OF IMPOUDMENT

Dear Mr. Flathers:

As you know the National Park Service entered into an agreement with the New England Steamship Foundation, Inc. in June 1996 to allow Dry Dock #1 at the Charlestown Navy Yard to be used, without charge, for rehabilitation work on the SS NOBSKA for a period of one year with an option to extend upon mutual agreement for additional one year periods not to exceed a total of five (5) years. By letter dated May 22, 2001, the Foundation was notified that the SS NOBSKA must be removed by August 16, 2001 in accordance with the terms of the said agreement because the dry dock is needed for rehabilitation work on government vessels including the USS Constitution as well as repairs to the dry dock itself.

The National Park Service has exercised extraordinary forbearance in not enforcing the notice to vacate in an effort to allow the Foundation to find some means to save the SS NOBSKA. However, this forbearance can not continue indefinitely.

Accordingly, you are hereby notified that the continued occupancy of the said Dry Dock #1 has been without authority since August 16, 2001, and said SS NOBSKA is hereby declared impounded by the National Park Service pursuant to 36 C.F.R. § 2.22(b)(1). You are further notified that the same vessel shall be considered to be abandoned property pursuant to 36 C.F.R. § 2.22(c) and will be subject to disposal in accordance with 41 C.F.R. unless claimed and removed within 60 days of the receipt of this letter.

I hope and expect that you will give the resolution of this matter your immediate attention.

**Attachment 8**

I hope and expect that you will give the resolution of this matter your immediate attention.

Sincerely,



Terry Savage
Superintendent

cc:    Assistant US Attorney, George Henderson
       DOI, Office of the Solicitor, Tony Conte

PS Form 3800, June 1990

5/7/03

Mr. Arthur E. Flathers, President
The New England Steamship Foundation
63 Union Street
New Bedford, Massachusetts 02740

Postage

Certified Fee

Special Delivery Fee

Restricted Delivery Fee

Return Receipt Showing
to Whom & Date Delivered

Return Receipt Showing to Whom,
Date, & Addressee's Address

TOTAL Postage
& Fees

Postmark or Date

$

$

4.42

P 722 957 375

Certified Mail Receipt

No Insurance Coverage Provided
Do not use for International Mail

---

**SENDER:**
* Complete items 1 and/or 2 for additional services.
* Complete items 3, and 4a & b.
* Print your name and address on the reverse of this form so that we can
return this card to you.
* Attach this form to the front of the mailpiece, or on the back if space
does not permit.
* Write ''Return Receipt Requested'' on the mailpiece below the article number.
* The Return Receipt Fee will provide you the signature of the person delivered
to and the date of delivery.

3. Article Addressed to:

Mr. Arthur E. Flathers, President
The New England Steamship Foundation
63 Union Street
New Bedford, Massachusetts 02740

I also wish to receive the
following services (for an extra
fee):

1. ☐ Addressee's Address

2. ☐ Restricted Delivery

Consult postmaster for fee.

4a. Article Number
P 722 957 375

4b. Service Type
☐ Registered        ☐ Insured
☒ Certified         ☐ COD
☐ Express Mail      ☐ Return Receipt for
                       Merchandise

7. Date of Delivery
5-14-03

5. Signature (Addressee)

6. Signature (Agent)

8. Addressee's Address (Only if requested
and fee is paid)

PS Form **3811**, November 1990    ☆U.S. GPO: 1991—287-066    **DOMESTIC RETURN RECEIPT**

**ATTACHMENT 9**



**MAIN OFFICE**
Sundial Building
63 Union Street
New Bedford, MA 02740
Tel: (508) 999-1925
FAX (508) 999-0230
email: nobska@tiac.net

**CHARLESTOWN OFFICE**
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129
Tel: (617) 242-5681
FAX (617) 242-5327
www.nobska.org

# THE NEW ENGLAND
# STEAMSHIP FOUNDATION

Saving the S.S. NOBSKA, America's last coastal steamer

July 7, 2003

Mr. Terry Savage, Superintendent
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

Dear Mr. Savage,

This letter is in response to your letter dated May 5, 2003 regarding
the SS NOBSKA. I contacted Peter Promutico of your offices shortly
after receipt of your letter, and he said we should concentrate on the
removal of SS NOBSKA from the dry-dock. As you know, we were working
with Senator Kennedy's office prior to your letter to get estimates of
cost of rapid removal which we estimate to be approximately $2 Million
and take 3-4 months. This estimate is supported by external estimates.

We had offered the National Park an opportunity to be part of a National
Transportation Exposition earlier this year, and are continuing work on
such a proposal. Background of that effort involves the role steamships
played in the development of technology in this country's ascent to the
most powerful nation in the world. Recently, we extended the original
transportation only technology assessment to the end of NOBSKA's service
life and included technologies of communication and computation further
strengthening the case for transportation as the father of technology.

The Foundation is continuing with the support of Packaging Trends, Ltd.
to develop sponsorship at various levels of government and key national
corporations to restore NOBSKA. There is special interest by the State
and City of New York in having NOBSKA, as the last coastal steamer, as
part of bicentennial celebrations of the steamship, and 400th anniversary
of the discovery of the Hudson River and the island of Manhattan, in the
latter half of this decade. We are also working with Boston, as nation's
first port, and Massachusetts, as "a place of firsts" from technology to
major colleges and universities and the Boston Pops.

The Foundation continues to believe NOBSKA's restoration can and should
be undertaken as emblematic of the coastal steamer's important role in
linking farms and factories to markets that made this country a major
world power. Given this opportunity, New England Steamship Foundation
has no intention of abandoning NOBSKA after having "invested" several
millions of primarily tax-payer dollars. We hope the Park Service can
see their way to joining this effort which could yield according to our
business plans access to NOBSKA operating surpluses as an endowment.

Regards,



**Attachment 9**

**ATTACHMENT 10**

August 4, 2003

A44 (BOST-A)

Mr. Arthur E. Flathers, President
The New England Steamship Foundation
63 Union Street
New Bedford, MA  02740

## NOTICE OF IMPOUNDMENT AND STORAGE FEE ASSESSMENT

Dear Mr. Flathers:

By letter dated May 22, 2001, you were notified that the National Park Service's needs for Dry Dock 1 at the Charlestown Navy Yard required the removal of the SS Nobska by August 16, 2001, as required under the terms of Agreement No. 1443AG1720-96-005 which provided for a maximum term of occupancy of five years which term expired on June 17, 2001.  By letter dated May 5, 2003, you were notified that the continued occupancy of the said Dry Dock has been without authority since August 16, 2001, and that the said SS Nobska is impounded by the National Park Service pursuant to 36 C.F.R. § 2.22(b)(1) and would be considered to be abandoned property pursuant to 36 C.F.R. § 2.22(c) and would be subject to disposal unless claimed and removed within sixty (60) days of receipt of the said letter.

This letter is to inform you that pursuant to 36 C.F.R. § 2.22(b)(4) the New England Steamship Foundation, Inc. will be assessed an impoundment and storage fee of $750 per day effective July 14, 2003, and payable weekly.  Failure to pay the said fee will result in arrest of the said vessel and referral of this matter to the United States Attorney.

Sincerely,

Terry W. Savage
Superintendent

cc:  Assistant US Attorney, George Henderson
        DOI, Office of the Solicitor, Tony Conte

**Attachment 10**

**ATTACHMENT 11**



**THE NEW ENGLAND STEAMSHIP FOUNDATION**

Saving the S.S. NOBSKA, America's fast coastal steamer

**MAIN OFFICE**
Sundial Building
63 Union Street
New Bedford, MA 02740
Tel: (508) 999-1925
FAX (508) 999-0230
email: nobska@tiac.net

**CHARLESTOWN OFFICE**
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129
Tel: (617) 242-5681
FAX (617) 242-5327
www.nobska.org

August 25, 2003

Mr. Terry Savage, Superintendent
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

Dear Mr. Savage,

I am very sorry to hear that the Boston National Historic Park has found it necessary to begin charging the Foundation for use of your dry-dock. The Foundation realizes we have seriously overstayed our original commitment to John Burchill and the Park Service who have been so generous, and we can only say it has not been for lack of trying. We have approached the Administration and the Congress in Washington as well as our State government for funds to restore the NOBSKA, and at least remove her from your dry-dock. The Foundation strongly believes the SS NOBSKA represents a part of the nation's maritime history well worth preserving for the general public.

In previous correspondence I have mentioned the Foundation's effort to develop a transportation exposition, and in July letter mentioned extension to other technologies such as communication and computing. We believe there exists an opportunity for the Park Service to join in a technology (broader than transportation, but starting with the steamship nearly 200 years ago) exposition to our mutual advantage. I realize it is getting late in the saga of NOBSKA in your dry-dock, but I would still appreciate an opportunity to share some ideas of how we might collectively benefit. The following are some examples.

SS NOBSKA as centerpiece of Fulton's bicentennial on Hudson in 2007
SS NOBSKA as an element of Boston and Harbor Islands National Parks
SS NOBSKA as a New England coastal steamer showing region's heritage
SS NOBSKA as cornerstone exemplar of steamship's transportation role
SS NOBSKA as part of a technology exposition on nation's development

My recollection is John Burchill in his Park Service career made an urban National Park a reality in Lowell that has been replicated in New Bedford's whaling National Park. If somehow the NOBSKA could be restored, and made available for the public's benefit, I think there is enormous potential for benefits to accrue to the Park Service as custodian of our history through recreation and education. Tourism, recreation and even entertainment that are high growth industries in the world all rely on new experiences and learning for success.

I will call next week to see if we can arrange a meeting in Boston.



**Attachment 11**

# ATTACHMENT 12



## United States Department of the Interior

OFFICE OF THE SOLICITOR
One Gateway Center – Suite 612
Newton, MA 02458-2802

TEL: (617) 527-3400
FAX: (617) 527-6848

March 3, 2004

Thomas Carroll
P.O. Box 4797
Vineyard Have, MA 02568

Re:  SS Nobska

Dear Mr. Carroll:

As per our recent conversation enclosed herewith please find a Bill of sale which will transfer ownership of the SS Nobska to the United States.  Please have this instrument executed by the appropriate parties on behalf of the Foundation and return the same to this office.

I have confirmed with the national Park Service that you will be sent a schedule detailing the time by which a demolition contract must be executed.  If the Foundation is able to secure the necessary funding to restore the vessel to the condition necessary to safely remove in from the Charlestown Navy Yard dry dock prior to that date, the NPS will please to allow the removal of the Nobska which will save substantial amount of funds.

Thanking you for your cooperation, I am

Very truly yours,

Anthony R. Conte
Regional Solicitor

cc: Superintendent, Boston NHP

**Attachment 12**

**ATTACHMENT 13**

# United States Department of the Interior

NATIONAL PARK SERVICE
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

IN REPLY REFER TO:



September 7, 2004

Mr. Thomas Carroll
P.O. Box 4797
Tisbury, MA 02568

Dear Tom:

I want to update you on our schedule for proposals on removing the Nobska from the Drydock. The solicitation for bids will be released on September 15, with proposals due by October 29. We expect an award will be made on or about November 17.

To facilitate the Notice to Proceed for the contractor, the Steamship Foundation will have to transfer the Nobska to the National Park Service before award. I would ask that you work with the National Park Service to begin that process now so that proper administrative details can be accomplished before award. Please call Dave Brouillette at 617-242-5646 to make those arrangements.

Thank you again for being so cooperative with the National Park Service and the Navy. I look forward to hearing from you soon.

Sincerely,

Terry Savage
Superintendent

Cc: Anthony Conte

**Attachment  13**

## Bill of Sale

Indenture made the _____ day of March 2004, by and between the United States of America, acting by and through the National Park Service (Purchaser), and the New England Steamship Foundation of 63 Union Street, New Bedford, Massachusetts 02740 (Vendor).

Whereas, Vendor has agreed to sell to Purchaser the vessel SS NOBSKA, including all personal property, chattels, and effects located therein and thereon for the sum of One ($1.00) dollar, owned by Vendor and located at Dry Dock No. 1, at the Charlestown Navy Yard Unit of the Boston National Historical Park, Charlestown, Massachusetts.

Now, therefore, in consideration of the foregoing the parties agree as follows:

1. **Sale -** In consideration of the sum of One ($1.00) dollar and other good and valuable consideration, now paid by Purchaser to Vendor, the receipt and sufficiency of which is hereby acknowledged, Vendor hereby sells, conveys and assigns unto Purchaser all of its right, title and interest in the said vessel SS NOBSKA, including all personal property, chattels, and effects located therein and thereon. To have and to hold the same unto Purchaser and its assigns absolutely and forever.

2. **Surrender -** Vendor shall surrender and vacate the said SS NOBSKA. If Vendor shall fail to remove Vendor's movable personal property, then, Vendor's said personal property shall become the property of Purchaser, at Purchaser's option, without compensation therefor, and no claim for damages against Purchaser, its officers or agents, shall be created by or made on account thereof.

3. **Warranties -** Vendor does hereby covenant and agree to and with Purchaser to warrant and defend the sale of the said vessel SS NOBSKA, personal property, chattels, and effects unto Purchaser against all claims. Vendor further warrants that no broker or agent is due any fee or commission on this sale and shall indemnify and defend Purchaser against any such claim.

In Witness Whereof, I/We have hereunto set my/our hand(s) and seal(s).

NEW ENGLAND STEAMSHIP FOUNDATION

Seal

_____          By_____          _____
     Witness                        Arthur Flathers, President                Date


_____          By_____          _____
     Witness                        Warren Hartwell, Chairman               Date

**ATTACHMENT 14**

United States Department of the Interior

NATIONAL PARK SERVICE
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

IN REPLY REFER TO: November 3, 2004

Mr. Warren Hartwell
WRH Industries
957 Airport Road
Fall River, MA 02720

Dear Mr. Hartwell:

I am writing to you to record a conversation we just concluded about transfer of the SS Nobska to the National Park Service. You informed me that the Board of the New England Steamship Foundation voted to retain ownership of the SS Nobska sometime after voting to give it to the National Park Service at the last Annual Meeting this spring in New Bedford. This was surprising news to me.

After our call, I phoned Tom Carroll to tell him of the conversation I had with you. When I asked him about this vote by the Board to retain ownership of the Nobska, he had no knowledge of it. He informed me that Art Flathers was opposed to the idea of turning the ship over to the Service, but, that he was the only Board Member who held that opinion.

Due to the fact that I am hearing two completely different stories from members of the same Board, I am concerned the Steamship Foundation is not being truthful with the National Park Service. I understand you will be out of town until November 11, and you will be speaking to other board members. Unless I hear otherwise, I will assume what you told me is correct and I will inform Tony Conte to proceed with legal action. I will expect to hear from your no later than November 15.

Sincerely,

David R. Brouillette
Deputy Superintendent

Cc      Terry Savage
        Tony Conte
        Commander Lewin Wright
        Tom Carroll

**Attachment 14**

**ATTACHMENT 15**



Stern view of the Nobska in Dry
Dock No. 1.

**Attachment  15**

**ATTACHMENT 16**



Port quarter view of topsides
looking forward.

**Attachment 16**

**ATTACHMENT 17**



Port quarter view.

**Attachment 17**

**ATTACHMENT 18**



Starboard quarter view.

**Attachment 18**

**ATTACHMENT 19**



Missing steel and wood transverse
framing and wooden decking,
Frames 1-32, Hurricane Deck.

**Attachment 19**

**ATTACHMENT 20**



Missing wood decking and rotted transverse wood frames on Hurricane Deck.

**Attachment 20**

**ATTACHMENT 21**



Hurricane Deck, looking forward.

**ATTACHMENT 22**



Hurricane Deck, looking aft from port side.

**Attachment 22**

**ATTACHMENT 23**



Main Deck, looking forward to
stem, showing dilapidated decking.

# ATTACHMENT 24



Main Deck, looking aft from
starboard. Showing plastic sheeting
in an attempt to keep water from
cascading to lower spaces.

**Attachment 24**

**ATTACHMENT 25**



View of fantail over steering flat.

**Attachment  25**

**ATTACHMENT 26**



# United States Department of the Interior

National Park Service
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

## NOTICE OF INTENT TO COLLECT A DEBT

April 26, 2005

The New England
Steamship Foundation, Inc.
P.O. Box 1642
Edgartown, MA 02539-1642

Dear Mr. Warren Hartwell:

Our records indicate the following 21 Bills for Collection Numbered: BC 1720D0120 dated August 8, 2003, BC 1720D0121 dated August 8, 2003, BC 1720E0008 dated October 17, 2003, BC 1720E0009 dated October 17, 2003, BC 172E0013 dated November 3, 2003 and BC 1720E0028 dated November 25, 2003 BC 1720E0028 dated March 26, 2004, BC 1720E0034 dated March 26, 2004, BC 1720E0046 dated March 26 2004, BC 1720E0050 dated March 26, 2004, BC 1720E0072 dated April 30, 2004, BC 1720E0084 dated June 17, 2004, BC 1720E0099 dated July 16, 2004, BC 172E0115 dated August 2, 2004, BC 1720E0125 dated August 30, 2004, BC 1720F0007 dated October 8, 2004, BC 1720F0024 dated October 29, 2004, BC 1720F0034 dated December 8, 2004, BC 1720F0041 dated December 30, 2004, BC 1720F0047 dated February 1, 2005, and BC 1720F0057 dated February 28, 2005, are still outstanding. As of this notice, the total amount due is $502,063.97. Interest and administrative charges may have been assessed to your account. After the debt(s) have been delinquent for 90 days, a 6% per annum penalty may also be assessed on any unpaid portion of the debt. This penalty will be accrued from the first day the debt became delinquent.

To repay your debt, send a check or money order, payable to the National Park Service, for the full amount that you owe to:

> DOI, National Park Service
> Boston National Historical Park
> Charlestown Navy Yard
> Boston, MA 02129

If you have any questions concerning this notice, please contact Nancy R. Tansino at 617-242-5640. Thank you for your attention to this matter.

Sincerely,

Nancy R. Tansino
Acting Chief of Administration

**Attachment 26**

If your debt is not resolved, the National Park Service (NPS) will refer your debt to the U.S. Department of the Treasury for further collection action. One or more of the following collection mechanisms may be used: the Treasury Offset Program (TOP), the Internal Revenue Service and/or the Treasury Cross-Servicing Program. TOP and the IRS will accomplish collection by administrative offset. If your debt is submitted to the TOP, the U.S. Department of the Treasury will reduce or withhold any of your eligible Federal payments by the amount of your debt. This process, known as "offset," is authorized by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996. <u>U.S. Treasury is not required to send you notice before your payment is offset.</u> Federal payments eligible for offset include:

-- your income tax refunds (See Page 3 for additional information);
-- your Federal salary pay, including military pay (see Page 3 for additional information);
-- your Federal retirement, including military retirement pay;
-- your contractor/vendor payments;
-- certain Federal benefit payments, such as Social Security, Railroad Retirement (other than tier 2), and Black Lung (part B) benefits (when regulations are published); and
-- other Federal payments, including certain loans to you, that are not exempt from offset.


**The law requires us to tell you that you may:**

(1) inspect and copy our records related to your debt;
(2) request a review of our determination that you owe this debt;
(3) be entitled to a hearing if we determine that a hearing is required (applies to federal employees; see Attachment A for additional information);
(4) request a waiver of all or a part of the debt (applicable when the debt arises from an administrative error and the individual has no fault, i.e., a reasonable person would not have been aware of an error; the National Park Service is **not** required to stay commencement of TOP upon request for a waiver); and
(5) enter into an acceptable written repayment agreement.

If Treasury Cross-Servicing collects your debt, you will receive a demand letter on Treasury letterhead and an 18% fee will be added to the total amount of the debt. This fee may increase if the collection is referred to an outside entity for collection. One or more of the following actions made be taken to collect the debt:

-- Offset of any payments which the debtor is due, including tax refunds, and salary.
-- Referral of the debt to a private collection agency.
-- Referral of the debt to the Department of Justice or agency counsel for litigation.
-- Reporting of the debt to a credit bureau.
-- Reporting of the debt, if discharged, to IRS as potential taxable income.

**The law requires us to provide you the:**
-- Opportunity to inspect and copy records relating to the debt;
-- Opportunity for a review within the agency; and
-- Opportunity to enter into a written repayment agreement.

<u>**TO AVOID THE TOP AND/OR CROSS-SERVICING:**</u> You must, within 30 days from this date, remit the full amount owed or do one of the following:

   --    **AGREE TO A REPAYMENT PLAN:**  If you are unable to pay your debt in full, you must contact the Accounting Operations Center, agree to a repayment plan acceptable to us, and make payments required in the repayment plan.  The NPS will make every attempt to accommodate debtors' needs so long as the terms of the repayment schedule conform with NPS repayment policies requiring timely repayment of the debt.

   --    **REQUEST A REVIEW IF YOU BELIEVE THE DEBT IS NOT OWED:**  If you believe that all or part of the debt is not past due or legally enforceable, or you dispute the existence or amount of the debt, you must, within 30 days from this date, contact the Accounting Operations Center and send complete written documentation and evidence to support your position.  **Please include your current address and phone number on your written documentation.**  We will inform you of our decision about your debt.  Federal employees may also petition for a hearing (see Attachment A).

**BANKRUPTCY:**  If you have filed for bankruptcy and the automatic bankruptcy stay is in effect, you are not subject to offset while the stay is in effect.  Please notify the Accounting Operations Center of the stay by sending evidence concerning the bankruptcy.

If you make or provide any knowingly false or frivolous statements, representations, or evidence, you may be liable for penalties under the False Claims Act (31 U.S.C., Sections 3729-3731), or other applicable statutes, and/or criminal penalties under 18 U.S.C., Sections 286, 287, 1001, and 1002, or other applicable statutes.

Please make all checks or money orders payable to the National Park Service with the Bill for Collection number and your Social Security Number written in the memorandum section of the check.  To make payment by MasterCard, Visa, or Discover please call (703) 487-9182.  Please address all correspondence to the NPS address listed above

If you have any questions concerning this notice, please contact Peter Promutico at 617-242-5640 **Please include your current address and phone number on any written correspondence with this office in order to expedite communication with you.**  Thank you for your attention to this matter.

Sincerely,

*Nancy R. Tansino*

Nancy R. Tansino
Acting Administrative Officer


# Additional information on Federal salary pay,
# including military pay income tax refunds

**IF YOU FILE A JOINT INCOME TAX RETURN:**  If you file a joint income tax return, you should contact the Internal Revenue Service before filing your return regarding the steps to take to protect the share of the income tax refund which may be payable to your spouse, who is not a delinquent debtor to the U.S. Government.

**IF YOU ARE A FEDERAL EMPLOYEE:**

Your current net disposable pay is subject to offset if you do not pay your debt or take other action described above.  Under the TOP, the U.S. Treasury will deduct up to 15% of your disposable net pay

beginning in the pay period that your debt is submitted to the TOP, and continuing every pay period until your debt, including interest, penalties and other costs, is paid in full. If you make or provide any knowingly false or frivolous statements, representations, or evidence, in addition to other penalties, you may be subject to disciplinary actions.

Federal employees who wish to petition for a hearing to dispute the existence or amount of the debt, or the amount of the payroll deduction, must file a written request for a hearing no later than 30 days from this date send this request to the Park Management. The Park is responsible for forwarding the request to AOC/ASG . This request must contain specific evidence and documentation supporting your position that the debt is not past due or legally enforceable. The timely filing of a petition for hearing will stay the commencement of offset proceedings. An oral hearing is will be conducted only when the National Park Service makes a determination that the question of indebtedness cannot be resolved by review of the documentary evidence, for example, when the validity of the debt turns on an issue of credibility or veracity. Otherwise, the hearing will consist of a review of the documentary evidence. A final decision on the hearing (if one is requested) will be issued no later than 60 days after the filing of a petition requesting the hearing (unless extended by the hearing official).

# ATTACHMENT 27



# United States Department of the Interior

NATIONAL PARK SERVICE
Boston National Historical Park
Charlestown Navy Yard
Boston, MA 02129-4543

IN REPLY REFER TO:

April 27, 2005

Mr. Michael DiLauro
U.S. Department of Justice
P.O. Box 14271
1425 New York Ave.
Washington, DC  20044-4271

Dear Mr. DiLauro:

Enclosed you will find copies of the advertisement of the Notice of Arrest of Vessel for the NOBSKA in the *Boston Globe* and *Boston Herald*.  If you should have any questions, please call David Brouillette at 617-242-5646.

Mary A. McCormack
Management Support Specialist

Enclosure

**Attachment 27**

Public Alley 10, on the southeasterly side; from East Newton Street, approximately 85 feet northeasterly; and from East Brookline Street approximately 85 feet northwesterly.

At the petitioners request at 10:00 a.m. in Room 801, Boston City Hall on April 28, 2005, as the time and place for the Public Hearing.

Joseph F. Casazza, Chairman
Michael Galvin
Gary Moccia
Thomas Tinlin
Public Improvement Commission

A true copy of an order passed by said Commission on said day. Attest: Michelle L. O'Neill, Executive Secretary.

Apr 16, 19

---

**400 Legal Notice**

**NOTICE OF ARREST OF VESSEL**

In obedience to a Warrant of Seizure directed to me in the captioned proceeding, I have on the 01 day of April, 2005, seized and taken into my possession the following defendant: the SS NOBSKA, (hereinafter collectively referred to as the "Vessel") for the causes set forth in the Verified Complaint in rem, to wit: for foreclosure of maritime liens, now pending in the United States District Court for this District. The vessel is located in Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston National Historical Park, Boston, Massachusetts. The amount demanded is $214,813.67, attorneys' fees, plus costs.

I HEREBY GIVE NOTICE, that, pursuant to Rule C(b)(b) of the Federal Rules of Civil Procedure, claims of persons entitled to possession of the Vessel, and application for intervention by persons claiming maritime liens or other interests in the Vessel must be filed with the Clerk of Court and a copy thereof served upon attorneys for plaintiff United States of America within ten (10) days after publication of this Notice in the Boston Globe and/or the Boston Herald; answers to the complaint, whether by such claimants to possession or by those claiming any other interest in the property, must be served and filed within twenty (20) days after date of publication of this Notice in the Boston Globe and/or the Boston Herald; that as to any person not so serving and filing his claim and answer, default will be noted and condemnation ordered; and that application for intervention under Rule 24 of the Federal Rules of Civil Procedure by persons claiming maritime liens or other interests may be untimely if not filed within the time allowed for claims to possession

UNITED STATES MARSHAL FOR THE DISTRICT OF MASSACHUSETTS
Apr 16, 17, 18

---



**INVITATION TO BID**

The Massachusetts Water Resources Authority is seeking bids for the following:

| BID NO. | DESCRIPTION | DATE | TIME |
|---|---|---|---|
| 9411 | Purchase and (1st Stage) | 5/02/05 | 11:00 a.m. |
| | Supply of | | |
| | Electric Power(2nd Stage) | 5/12/05 | 10:30 a.m. |
| | to Deer Island | | |
| WRA-2456 | Two (2) 8" and | 5/06/05 | 11:00 a.m. |
| | Six (6) 6" Fabri | | |
| | Knife Valve or | | |
| | Equal | | |
| WRA-2460 | Heat Exchange | 5/06/05 | 2:00 p.m. |
| | Replacements/ | | |
| | Refurbishments | | |

Sealed bids will be received at the offices of the Massachusetts Water Resources Authority, Charlestown Navy Yard, Document Distribution Office, 100 First avenue, First Floor, Boston, Massachusetts 02129, up to the time and date listed above at which time they will be publicly opened and read.

---

**MASSACHUSETTS WATER RESOURCES AUTHORITY ADVERTISEMENT FOR BIDS**

The Massachusetts Water Resources Authority ("Authority") will receive sealed bids for Ambulance Response Services, MWRA Contract No. S412, at the office of the Authority at Charlestown Navy Yard, 100 First Avenue, Boston, MA 02129, 1st Floor, Procurement Department, Document Distribution Office, until 2:00 p.m., Tuesday, May 10, 2005, immediately after which the bids will be opened and read publicly.
The service include twenty-four hour Advanced Life Support ambulance services for Winthrop/Deer Island.
Contract Documents will be available on or after April 19, 2005. Bidders may obtain two sets of the above address. Documents may also be examined at F.W. Dodge, 24 Hartwell Avenue, Lexington, MA 02173.
Bids must be accompanied by bid security in the amount of five percent (5%) of the first year's Annual Services Fee.

Kevin P. Feeley, Director of Procurement
Date: April 16, 2005

---

**400 Legal Notice**

Authority has decided to rotate award of this service, so that the current bidder is required to wait the approval of this arrangement.
Interested firms may obtain the complete Request for Qualification Statements/Proposals from the Authority's Procurement Department Distribution Center, First Floor, Charlestown Navy Yard, 100 First Avenue, Boston, MA 02129, telephone (617) 788-2575 on or after April 22, 2005. Qualification Statements/Proposals will be received at the Authority's Procurement Department Document Distribution Center until 11:00 a.m., Friday, May 20, 2005.

Kevin P. Feeley, Director of Procurement
Date: April 16, 2005

---

**400 Legal Notice**

**In Public Improvement Commission of the City of Boston**

April 14, 2004

ORDERED: That due notice be given that this Commission is of the opinion that in said City of Boston the following public improvement will be considered at the request of the petitioners: The Massachusetts Department of Capital Asset Management, the Commonwealth of Massachusetts Department of Corrections, the Commonwealth of Massachusetts Department of Conservation and Recreation and the Commonwealth of Massachusetts Department of Youth Services

For the layout, established grade and construction of Canterbury Lane, West Roxbury, from Morton Street to Canterbury Street.

And also for the widening and relocation of Canterbury Street, from a point approximately 1500 feet northeast of Walk Hill Street, approximately 1650 feet northeasterly.

And for the discontinuance of an easement in Canterbury Street, approximately 760 feet west of Morton street, approximately 210 feet northwesterly.

At the petitioners request at 10:00 a.m. in Room 801, Boston City Hall on April 28, 2005, as the time and place for the Public Hearing.

Joseph F. Casazza, Chairman
Michael Galvin
Gary Moccia
Thomas Tinlin
Public Improvement Commission

A true copy of an order passed by said Commission on said day. Attest: Michelle L. O'Neill, Executive Secretary.

Apr 16, 19

---

**405 Legal Notice**

**LICENSING BOARD FOR THE CITY OF BOSTON**

April 14, 2005

As required by law, notice is hereby given that Otherguys Enterprises Inc, 54 Salem Street, Boston, MA 0212, holder of a 7-Day Malt and Wine w/Liquors License, has petitioned to transfer the licensed business, from the above corporation, to Pusyycat Swallow Corp. d/b/a "Eclano" Caterina DiPrisco, Mgr. (at the same location).

Hearing: Wednesday, May 4, 2005 at 10:00 a.m., William F. Arrigal, Jr., Library, Room 809A, New City Hall, Boston, For the Board, by its Secretary, JEAN M. LORIZIO.

Apr 16

---

**450 Legal Notice**

Said land is situated in Block 150 in the Roxbury District shown on the Boston Assessors' plan.

For mortgagor's title see deed recorded with the Suffolk County Registry of Deeds in Book 34047, Page 321.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cash, cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify as a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable in cash or current funds in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 321 Billerica Road, Suite 210, Chelmsford, MA 01824-4100 c/o Sanjit S. Korde or such other time as may be designated by mortgagee.

Other terms to be announced at the sale.

Deutsche Bank National Trust Company, as Trustee of Argent Securities Inc. Asset Backed Pass-Through Certificates, Series 2004-PW1 under the Pooling and Servicing Agreement dated as of June 1, 2004. Without Recourse present holder of said mortgage, by its attorney,

Sanjit S. Korde
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100
(978) 256-1500
Apr 2, 9, 16

---

**460 Legal Notice**

**MORTGAGEE'S SALE OF REAL ESTATE**
**Premises 5 Walton Street**
**Boston (Dorchester), MA**

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Coles Voyard and Noriko Voyard, and by Coles Voyard, Trustee of C&N Realty Trust (per Land Court Judgment in Civil Action No. 302551, recorded at Suffolk Registry of Deeds in Book 36467, Page 350) to Home Star Mortgage Services, LLC, dated March 28, 2003 and recorded with Suffolk County Registry of Deeds in Book 31034, Page 26, of which mortgage the undersigned is the present holder, for breach of the conditions in said mortgage contained and for the purpose of foreclosing the same will be sold at Public Auction on May 16, 2005 at 10:00 AM, upon the mortgaged premises at 5 Walton Street, Boston (Dorchester), Massachusetts, all and singular the premises described in said mortgage, to wit:

"The land with the buildings thereon situate in the Dorchester District of the City of Boston, Suffolk County, Commonwealth of Massachusetts, being the Lot Marked "E" on a plan made by John H. Rice, dated December 29, 1894 and recorded with Suffolk County Deeds in Book 2290 at Page 83, bounded and described as follows:

NORTHERLY by Walton Street, fifty (50.00) feet;
EASTERLY by Lot D on said plan, one hundred (100.00) feet;
SOUTHERLY by Lot F on said plan, fifty (50.00) feet; and
WESTERLY by other land of Hancock (a/k/a Haddock), one hundred (100.00) feet.

Containing 5,000 square feet of land.

For my title, see deed recorded with the Suffolk County Registry of Deeds at Book 26435, Page 353.

In the event of any typographical errors in the publication of this notice, the description in the mortgage shall control.

Terms of Sale: Said premises will be sold and conveyed subject to all unpaid taxes, tax titles, municipal liens and assessments, if any. Five thousand dollars ($5,000.00) of the purchase price shall be paid in cash, certified check, bank treasurer's or cashier's check at the time and place of the sale by the purchaser, and the balance of the purchase price shall be paid by certified check, bank treasurer's or cashier's check within thirty (30) days after the date of sale and shall be deposited with J. Patrick Kinhan, Esq., of Topsfield, Massachusetts.

Other terms to be announced at the sale.

JP Morgan Chase Bank, as successor in interest to Bank One, NA, as Trustee of the ACE Securities Corp., Home Equity Loan Trust, Series 2003-HS1, Present Holder of said Mortgage, By Assignment of Mortgage, By its Attorney J. PATRICK KINHAN, ESQ., 35 Main Street, Topsfield, MA 01983, (978) 887-4055. Dated: April 12, 2005.

Apr 16, 23, 30

**450 Legal Notice**

CARE AND PROTECTION TERMINATION SUMMONS

Docket No.

COMMONWEALTH OF MASSACHUSETTS

Juvenile Court
Lawre
Lawren

TO: John Richard

A petition has b court by the Dep ices, seeking as t Catherine and children) be fou protection and co ment of Social S dispense the requi herein to receive to any legal pro adoption, custody other disposition p herein, if it finds in need of care a the best interests be served by said

You are hereby of court, at the Lawren on 05/06/2 PRE-TRIAL CONF

You may bring a you have a right t court determines the court will app resent you.

If you fail to app ceed with a trial of tion and an adjudica

For further inforr the Clerk-Magistra

Witness: SALLY JUDITH M. BREE DATE ISSUED: 4/



**EQUAL HOUSING OPPORTUNITY**

Publisher's Notice

All real estate advertised in this publication is subject to the Federal Fair Housing Act of 1968, the Massachusetts Anti-Discrimination Act and the Boston & Cambridge Fair Housing Ordinances which make it illegal to advertise any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, national origin, ancestry, age, children, marital status, sexual orientation, veterans status or source of income or any intention to make any such preference, limitation or discrimination.

This newspaper will not knowingly accept any advertising for real estate which is in violation of the law.

Our readers are hereby informed that all dwellings advertised are available on an equal opportunity basis.

To complain of discrimination call HUD toll free at 1-800-827-5005. For the MA area call HUD at 617-994-8300. The toll free number for the hearing impaired is 1-800-927-9275 or 617-565-5453.

**CAPE COD WELLFLEET** Home for Rent. Right on the Atlantic. Atop a Sand Dune. Very Private Loc. 2 Bedroom, 2 Bath. Fully Furnished w/hot tub and wrap around deck. Satellite TV and Internet. Separate 1 Barn cottage w/ Kit&Bth. $7,000/Week. **Call: 212-581-6500**

**Cape Cod. West Dennis.** Clean/modern 2 br home. 3-season rm & lg deck. 1/2mi to beaches. Priv yard in safest neighborhd. $995/wk. 978-667-8129.

**CAPTIVA, FL** -- Rent 3-5 BR. bchfront, pool, homes. Avl weekly. American Realty. 800-547-0127. captiva-island.com

**DEER PARK Loon Mtn, NH** spac TH 2br 2 1/2 ba w/ wknds, 508-229-0244

**DISNEY WORLD / EPCOT** Luxury Villa. 1, 2, 3, 4 & 5 BR'S. full kitchen, & pool. Daily Rentals 800-892-8843

**FL/DISNEY**-Priv homes for rent. MAINE-Quality sail & fresh water cottages. 200 choices. 2-6 bedrooms. www.vacationcottages.com or call 207-374-3500

**Hampton Beach, NH** 2.5 BR cttge $300/wk May/June; $500/wk July/Aug.603-867-4112

**Hampton Beach, NH** rooms for rent. A/C condo close to bch. rent & sleep 609-576-8285

**Lake Sunapee, NH:** Waterfront, 3 BR, 2.5 BA. Sunny exposure, views of Mt. Love. Lawn, boat slip. Monthly or bi-weekly. www.vrbo.com/50412 or Randy@rmtresort.org. Call 603-763-2668

**MAINE** Lakefront w/ dock. 5br. $1,000 - $1,400/wk. 603-770-9798.

**MAINE** -New 4 BR Lake-side Cottage on wooded area on secluded pond, slps 8. wrp-md prch 2 mi fr. Blue Hill Village. avl June-sept. $1,000/wk June-Sept. 207-374-5335

**MAINE, TENANTS HRBR** -- 3-4 BR, freekeeping cottages, all seces, w/p & skiff. $7.50 & $850/wk 401-437-1293

**Marblehead:** Stunning views in this 2 BR ocean front condo. No pets or smoking. $1100 wk, $4000 mo. 781-631-3277

**MARTHA'S VINEYARD** -- New 4 Bdrm, 3 bath home near Menemsha Beach and Sunsets. 508-645-2544

**Martha's Vineyard:** Oak Bluffs. Contemporary Cape. Sleeps 6. 1584. Completely refurbished. $1400/wk. for June & Sept. $1800 for July & Aug. 781-659-4811

**ME** -- Sebago Lake area, 3 Cottages avail. pictur-esque + secluded on Lake w/beach. Mountain view, perfect getaway. great fishing. 770-338-4250

**N.H. LAKE HOUSE:** Sandy beach, dock, Jacuzzi, fish, amenities. Sleeps 1-12. Negotiable 978-263-0616

**NH LAKE OSSIPEE** Charming 2 1/2 rm lakefront cottage on the water. slps 6, sandy, friendly pets ok. $500/wk. 617-492-6029

**ONSET:** beach cottage, sleeps 5-6. $450/3days. 617-445-7494. kellysbythesea.com

**OSSIPEE LAKE, N.H.** waterfront 2br cott. By wk June-Sept.603-539-4791

**PORTSMOUTH, RI** -- Commerdence Pt. summer-escape! 2BR Bungalow. mins. fr. beach/shops. No smkng. $1500/mo. 917-375-9394

**SALISBURY BEACH:** 2BR/ 380/4BR cottages & condos. Many choices. Turn Saab Assoc 978-683-6699

**SQUAM LAKES, NH**- Lake-front cabin. 2BR, 2BA loft, slps 8, sunrm, deck. Avl May, 23-Oct 23. $1200-$1800/wk.

**SQUAM LAKES**-Squam-lakesresort.com ancabin.html 603-968-7227

**SOMERVILLE** -- Davis Sq, 3 spaces. Sunny 1500 SF spaces. Walk to T. lower space $2200, 400 SF lower space $550. 617-593-8533

**TAMPA-ST.   PETE**-Area. Furn Wtrft 1 & 2BR cottgs, decks, gated complx, walk to bch, docks, pets ok, from $650 & up/wk 727-397-7706

**MARBLEHEAD:**  CHOICE business location in Old Town. Sunny, friendly space $1800. The most thriving 2 blocks of Washington St near ocean. 978-335-2559

**VOICE YOUR OPINION!** Each week the Herald invites readers to answer a question posed by our Sports editors. Several are published and one lucky fan will win tickets to a local sporting event!

Turn to the Boston Herald's racing pages for results, schedules and handicapper Ed Gray's picks.

**FISHING FANS** depend on Ted Ancher's Bass Bets each week in the Herald.

Before hitting the links, take a look at Tee Time in the Sunday Herald. Each week Joe Gordon provides readers with the definitive source for golf news in New England.

**LOOKING TO DINE OUT?** Don't miss what the Herald's Mat Schaffer has to say about the local dining scene before heading out!

**GET THE SCOOP!** From the boardrooms to the barrooms to the locker rooms, the Inside Track in the Herald's got the scoop on what's really going on!

**BREWSTER:** Summer rental house with private beach. May 21-June 11. $1,000/week. 508-255-3615 or 508-255-3615.

**NEWTON 4 CORNERS** Retail/office. Lower level, 1500 sq. ft. $1500 mth. Call Sandi- 617-610-8880

**Watertown:** New Mod Lrge - Studio space in the heart of Watertown available during daytime hrs. 339-223-2416

---

**ATTENTION HOMEOWNERS**

Pay Off Those High Credit Card Bills Now! Call Evergreen Mortgage. Bankruptcy? Foreclosures Accepted? Self Employed. No Income Verification OK.

**5.9%**
CALL JOEL @ 800-693-2115 ejoelre.att.global.net

**877-525-3764**

**Preferred Vacation Rentals**
www.PreferredRentals.com

---

## 450 Legal Notice

### CARE AND PROTECTION TERMINATION OF PARENTAL RIGHTS SUMMONS BY PUBLICATION

Docket Number: CP-05D0023

**COMMONWEALTH OF MASSACHUSETTS**

Juvenile Court Department
Dedham Division
55 Allied Drive
Dedham, MA 02026

TO: Jamal Jones or any unknown or un-named father.

A petition has been presented to this court by Department of Social Services, seeking, as to the subject child(ren), Chozin Jesse JOHNSON, that said child be found in need of care and protection and committed to the Department of Social Services. The court may dispense the rights of the person named herein to receive notice of or to consent to any legal proceeding affecting the adoption, custody, or guardianship or any other disposition of the child(ren) named herein, if it finds that the child(ren) is/are in need of care and protection and that the best interests of the child(ren) would be served by said disposition.

You are hereby ORDERED to appear in this court, at the court address set forth above, on 05/12/05, at 9:00 a.m., for a PRE-TRIAL CONFERENCE.

You may bring an attorney with you. If you have a right to an attorney and if the court determines that you are indigent, the court will appoint an attorney to represent you.

If you fail to appear, the court may proceed with a trial on the merits of the petition and an adjudication of this matter.

For further information call the Office of the Clerk-Magistrate at 781-329-1500.

Witness: MARY M. McCALLUM, First Justice. JANE McDONOUGH, Clerk-Magistrate. DATE ISSUED: 03/17/05.
4/10, 4/17, 4/24, #535686

---

## 450 Legal Notice

### CARE AND PROTECTION TERMINATION OF PARENTAL RIGHTS SUMMONS BY PUBLICATION

Docket Number: CP-04D0113

**COMMONWEALTH OF MASSACHUSETTS**

Juvenile Court Department
Dedham Division
55 Allied Drive
Dedham, MA 02026

TO: Unknown and unnamed father

A petition has been presented to this court by Department of Social Services, seeking, as to the subject child(ren), Caitlin GIANMALVO, that said child(ren) be found in need of care and protection and committed to the Department of Social Services. The court may dispense the rights of the person named herein to receive notice of or to consent to any legal proceeding affecting the adoption, custody, or guardianship or any other disposition of the child(ren) named herein, if it finds that the child(ren) is/are in need of care and protection and that the best interests of the child(ren) would be served by said disposition.

You are hereby ORDERED to appear in this court, at the court address set forth above, on 05/16/05, at 9:00 a.m., for a PRE-TRIAL CONFERENCE.

You may bring an attorney with you. If you have a right to an attorney and if the court determines that you are indigent, the court will appoint an attorney to represent you.

If you fail to appear, the court may proceed with a trial on the merits of the petition and an adjudication of this matter.

For further information call the Office of the Clerk-Magistrate at 781-329-1500.

Witness: MARY M. McCALLUM, First Justice. JANE McDONOUGH, Clerk-Magistrate. DATE ISSUED: 03/30/05.
4/10, 4/17, 4/24, #535389

---

## 400 Legal Notice

### NOTICE OF ARREST OF VESSEL

In obedience to a Warrant of Seizure directed to me in the captioned proceeding, I have on the 01 day of April, 2005, seized and taken into my possession the following defendant, the S/3 NORSKA, thereinafter collectively referred to as the "Vessel") for the causes set forth in the Verified Complaint in rem, to wit: for foreclosure of maritime liens, now pending in the United States District Court for this District. The vessel is located in Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston National Historical Park, Boston, Massachusetts. The amount demanded is $214,313.67, attorneys' fees, plus costs.

I HEREBY GIVE NOTICE that, pursuant to Rule C(6)(b) of the Federal Rules of Civil Procedure, claims of persons entitled to possession of the Vessel, and application for intervention by persons claiming maritime liens or other interests in the Vessel must be filed with the Clerk of Court and a copy thereof served upon attorneys for plaintiff United States of American within ten (10) days after publication of this Notice in the Boston Globe and/or the Boston Herald; answers to the complaint, whether by such claimants to possession or by those claiming any other interest in the property, must be served and filed within twenty (20) days after date of publication of this Notice in the Boston Globe and/or the Boston Herald; that as to any person not so serving and filing his claim and answer, default will be noted and condemnation ordered; and that application for intervention under Rule 24 of the Federal Rules of Civil Procedure by persons claiming maritime liens or other interests may be untimely if not filed within the time allowed for claims to possession

UNITED STATES MARSHAL FOR THE DISTRICT OF MASSACHUSETTS
Apr 16, 17, 18

CALL (617) 423-4545. Place your ad in the Boston Herald Classified section today!

---

## PUBLIC NOTICE

The Joint Commission on Accreditation of Healthcare Organizations will conduct an accreditation survey of the North End Rehabilitation and Nursing Center on Friday, May 20, 2005.

The purpose of the survey will be to evaluate the organization's compliance with nationally established Joint Commission standards. The survey results will be used to determine whether, and the conditions under which accreditation should be awarded to the organization.

Joint Commission standards deal with organizational quality of care issues and the safety of the environment in which care is provided. Anyone believing that he or she has pertinent and valid information about such matters may request a public information interview with the Joint Commission's field representatives at the time of survey. Information presented at the interview will be carefully evaluated for relevance to the accreditation process. Requests for a public information interview must be made in writing and should be sent to the Joint Commission no later than five working days before the survey begins. The request must also indicate the nature of the information to be provided at the interview. Such requests should be addressed to:

Division of Accreditation Operations
Office of Quality Monitoring
Joint Commission on Accreditation
of Healthcare Organizations
One Renaissance Boulevard
Oakbrook Terrace, IL 60181
or Faxed to 630-792-5636
or E-mailed to complaint@jcaho.org

The Joint Commission will acknowledge such request in writing or by telephone and, if it so desires, will arrange for an interview. The organization will in turn, notify the interviewee of the date, time, and place of the meeting.

This notice is posted in accordance with the Joint Commission's requirements and may not be removed before the survey is completed.
Apr 17

1/17/05   Boston Sunday Herald

**BOSTON HERALD**    **MONDAY, APRIL 18, 2005**

sq., 1854. Brewer, surveyor, dated August 13, 1864, as approved by the Court, filed in the Land Registration Office as Plan No. 32341-B, a copy whereof is filed and filed with Certificate of Title No. 73285.

The above described land has the benefit of the right to use Delhi Street for all uses and purposes for which streets or ways are commonly used, in the City of Boston, and this right shall apply not only to that portion of Said Street shown on a plan of Oak Hill made by John H. Rice, dated Aug. 11, 1891, duly recorded in Book 2232, Pages 8, but over its entire extension and length to Norfolk street and as may hereafter extended.

For title see deed Certificate #112228.

**TERMS OF SALE:** Said premises will be sold and conveyed subject to all outstanding municipal or other public taxes, tax titles, assessments, liens or claims in the nature of liens, rights of tenants and parties in possession, and existing encumbrances of record, if any, which take precedence over the said mortgage above described.

**FIVE THOUSAND DOLLARS and NO/100** ($5,000.00) must be paid by certified, bank, treasurer's or cashier's check at the time and place of the sale by the purchaser as a deposit. The balance of the purchase price is to be paid in cash, or by certified check, bank cashier's check or bank treasurer's check within 30 days thereafter at the Law Offices of Shapiro & Kreisman, Chiswick Park, 480 Boston Post Road, Sudbury, MA 01776 (978) 443-8800. The description for the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.

Evermore Mortgage Company, PRESENT HOLDER OF SAID MORTGAGE.

Apr 11, 18, 25

---

**460 Legal Notice**    **460 Legal Notice**

**NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE**

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Kevin W. Corado to Mortgage Electronic Registration Systems, Inc. dated March 14, 2003 and recorded with the Suffolk County Registry of Deeds at Book 30385, Page 56, of which mortgage Mortgage Electronic Registration Systems, Inc. is the present holder, for breach of the conditions of said mortgage and for the purpose of foreclosing, the same will be sold at Public Auction at 12:00 p.m. on May 3, 2005, on the mortgaged premises located at 28 Dartmouth Street, Unit No. 4, 28 Dartmouth Street, Unit No. 4, 28 Dartmouth Street Condominium, Boston, Suffolk County, Massachusetts, all and singular the premises described in said mortgage, TO WIT:

Unit 4, 28 Dartmouth Street, Boston, Massachusetts, in the 28 Dartmouth Street Condominium, established by Master Deed dated March 9, 1987 and recorded with the Suffolk County Registry of Deeds on March 11, 1987, in Book 13473, Page 327, together with an undivided 3/75 percent interest in the common areas described in the Master Deed, as more completely described in the first Unit Deed conveyed by Declarant at Book 13788, Page 157, and as shown on Unit Plan referred to in said Deed, all as shown on the plans recorded with the Master Deed, as amended.

For mortgagor's title see deed recorded with Suffolk County Registry of Deeds at Book 28569, Page 116.

These premises will be sold and conveyed subject to and with the benefit of all rights, rights of way, restrictions, easements, covenants, liens or claims in the nature of liens, improvements, public assessments, any and all unpaid taxes, tax titles, tax liens, water and sewer liens and any other municipal assessments or liens or existing encumbrances of record which are in force and are applicable, having priority over said mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed.

**TERMS OF SALE:**

A deposit of Five Thousand ($5,000.00) Dollars by certified or bank check will be required to be paid by the purchaser at the time and place of sale. The balance is to be paid by certified or bank check in thirty days from the date of sale. Deed will be provided to purchaser for recording upon receipt in full of the purchase price. The description of the premises contained in said mortgage shall control in the event of an error in this publication.

Other terms, if any, to be announced at the sale.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Present Holder of said mortgage
By its Attorneys,
HARMON LAW OFFICES, P.C.
Neil W. Heiger, Esquire
150 California Street
Newton, MA 02458
(617) 558-0500

Apr 11, 18, 25

---

Servicing of Fire Extinguishers and Fire Suppression Systems in Various Schools will be accepted at the office of the official designated herein until the time and place indicated below at which time will be publicly opened and read aloud.

The attention of all bidders is directed to the provisions of the IFB and contract documents and especially to the requirements for bid deposits, insurance and performance bonds as may be applicable. Bids must be accompanied by a bid deposit in the form of a certified check drawn on, or a treasurers or cashiers check issued by, a responsible bank or trust company, payable to the City of Boston, or a bid bond or a surety company qualified to do business in Massachusetts and satisfactory in form to the Official. The amount of such check and penal sum of such bond shall be a sum equal to five (5) percent of the bid.

A performance bond shall be submitted to the Awarding Authority, 2nd floor, 26 Court Street, Boston, MA 02108 before twelve o'clock noon (Boston time) on Wednesday, May 4, 2005, at which time and place respective bids will be opened and read aloud. Late bids will not be accepted. General Contractors must file with their bids a copy of a valid Certificate of Eligibility (DCAM Form CQ7) showing that they are eligible to bid on projects in Painting, up to a project amount and up to an aggregate limit, and with a completed and signed Update Statement, (DCAM Form CQ3), summarizing the contractor's record for the period between the time DCAM certification and the date the contractor submits its bid.

The attention of all bidders is specifically directed to the equal employment opportunity section of the specifications and the obligation of the contractor and all subcontractors to take affirmative action in connection with employment practices throughout the work. Contractors are hereby notified that the work covered by this contract is governed by M.G.L. c.149, sections 26 to 27G, and in accordance therewith contractors shall pay prevailing wages as established by the Massachusetts Department of Labor and Workforce Development/Division of Occupational Safety.

A performance bond, and also a labor and materials or payment bond, of a surety company qualified to do business under the laws of the Commonwealth and satisfactory in form to the Awarding Authority, and each in the sum of 100 percent of the contract price, will be required of the successful bidder to guarantee the faithful performance of the contract.

The Awarding Authority reserves the right to waive any minor informalities or to reject any and all bids, or any part or parts thereof, and to award a contract as the Awarding Authority deems to be in the best interest of the City of Boston and the Boston Public Schools. The award of any contract shall be subject to the approval of the Superintendent of Schools and the Mayor of Boston.

ROBERT R. ROY
Director/Facilities Management

(April 18)

---

**NOTICE OF ARREST OF VESSEL**

In obedience to a Warrant of Seizure directed to me in the captioned proceeding, I have on the 01 day of April, 2005, seized and taken into my possession the following defendant: the S.S. NOESKA, (hereinafter collectively referred to as the "Vessel") for the causes set forth in the Verified Complaint in rem, to wit: for foreclosure of maritime liens, now pending in the United States District Court for this District. The vessel is located in Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston National Historical Park, Boston, Massachusetts. The amount demanded is $214,613.67, attorneys' fees, plus costs.

I HEREBY GIVE NOTICE that, pursuant to Rule C(6)(b) of the Federal Rules of Civil Procedure, claims of persons entitled to possession of the Vessel, and application for intervention by persons claiming maritime liens or other interests in the Vessel must be filed with the Clerk of Court and a copy thereof served upon attorneys for plaintiff United States of American within ten (10) days after publication of this notice in the Boston Globe and/or the Boston Herald; answers to the complaint, whether by such claimants to possession or by those claiming any other interest in the property, must be served and filed within twenty (20) days after date of publication of this notice in the Boston Globe and/or the Boston Herald; that as to any person not so serving and filing his claim and answer, default will be noted and condemnation ordered; and that application for intervention under Rule 24 of the Federal Rules of Civil Procedure by person claiming maritime liens or other interests may be untimely if not filed within the time allowed for claims to possession

UNITED STATES MARSHAL FOR THE DISTRICT OF MASSACHUSETTS

Apr 16, 17, 18

---

# Inspecting Gadgets

**Eric Convey's**

look at new-to-the-market personal technology items Mondays

---

Bids must be accompanied by a bid deposit in the form of a certified check drawn on, or a treasurer's or cashier's check issued by, a responsible bank or trust company, payable to the City of Boston, or a bid bond of a surety company qualified to do business in Massachusetts and satisfactory in form to the Awarding Authority. The amount of such check and penal sum of such bond shall be a sum equal to five (5) percent of the bid.

GENERAL BIDS shall be submitted to the Awarding Authority, 2nd floor, 26 Court Street, Boston, MA 02108 before twelve o'clock noon (Boston time) on Wednesday, May 4, 2005, at which time and place respective bids will be opened and read aloud. Late bids will not be accepted. General Contractors must file with their bids a copy of a valid Certificate of Eligibility (DCAM Form CQ7) showing that they are eligible to bid on projects in Painting, up to a project amount and up to an aggregate limit, and with a completed and signed Update Statement, (DCAM Form CQ3), summarizing the contractor's record for the period between the date DCAM certification and the date the contractor submits its bid.

The attention of all bidders is specifically directed to the equal employment opportunity section of the specifications and the obligation of the contractor and all subcontractors to take affirmative action in connection with employment practices throughout the work. Contractors are hereby notified that the work covered by this contract is governed by M.G.L. c.149, sections 26 to 27G, and in accordance therewith contractors shall pay prevailing wages as established by the Massachusetts Department of Labor and Workforce Development/Division of Occupational Safety.

A performance bond, and also a labor and materials or payment bond, of a surety company qualified to do business under the laws of the Commonwealth and satisfactory in form to the Awarding Authority, and each in the sum of 100 percent of the contract price, will be required of the successful bidder to guarantee the faithful performance of the contract.

The Awarding Authority reserves the right to waive any minor informalities or to reject any and all bids, or any part or parts thereof, and to award a contract as the Awarding Authority deems to be in the best interest of the City of Boston and the Boston Public Schools. The award of any contract shall be subject to the approval of the Superintendent of Schools and the Mayor of Boston.

ROBERT R. ROY
Director/Senior Structural Engineer
Facilities Management

(April 18)

---

**CITY OF BOSTON**

To the Public Safety Commission, Committee on Licenses, Inspectional Services Department.

Boston, March 28, 2005

**APPLICATION**

For the lawful use of the herein-described building, application is hereby made for a permit to a private, public, Business garage: 100 automobiles (facility exists with allowed use for parking), and also for a license to use the land on which such building, or on which the KEEPING OF STORAGE of 2,000 gallons of gasoline. Location of land: Fenway 160-174 Ipswich Street, Ward 04, Owner of land: One Sixty Ipswich Street, Inc., Applicant: Brown & Quilty, Esq., Dennis Quilty, P.C., Custom House Street, #300, Boston, MA 02110. Dimensions of land: Ft. front 200 (no change), Ft. deep 100 (no change). Area sq. ft. No change. Number of buildings or structures on land, the use of which requires land to be licensed: One building, Manner of lighting; in the tanks of vehicles, Dennis A. Quilty, 21, Custom House S., #300, Boston, MA 02110.

City of Boston, In Public Safety Commission, April 27, 2005. In the foregoing petition, it is hereby ORDERED, that notice be given by the petitioner to all persons interested that this Committee will, on Wednesday the 27th day of April at 9:30 a.m., consider the expediency of granting the prayer of said petition when any person objecting thereto may appear and be heard; said notice to be given by the publication of a copy of said petition and this order or notice thereon in the Boston Herald and by mailing by prepaid registered mail, not less than 7 days prior to such hearing, a copy to every owner of record of each parcel of land abutting on the parcel of land on which the building proposed to be erected for, or maintained as, a garage is to be or is situated. Hearing to be held at 1010 Massachusetts Ave., Boston, MA 02118, GARY MOCCIA, Chairman, PAUL CHRISTIAN, TOM TINLIN, Acting Commissioner, Committee on Licenses. A true copy. Attest: BRIGID KENNY, Secretary.

Apr 4, 11, 18

---

**For convenience of the Bos...**
**call (800...**

---

*(handwritten)* April 18, 2005. BOSTON HERALD

Ad Number      4ECT0330
Client:
ID:            ss nobska/arrest of vessel
Classification: LEGAL NOTICES
Size:          2x36
Begin Date:    04/16/2005
End Date:      04/18/2005


David /Brouillette/
Boston National Hist
Park
Boston, MA   02129


*For inquiries regarding billing, please call:* **617-929-2681**. *To place an ad:* **617-929-1500**

# The Boston Globe

## CERTIFIED


Below is your advertisement from THE BOSTON GLOBE, beginning 04/16/2005 and
ending 04/18/2005, appearing 3 time(s) in the Classification,
LEGAL NOTICES.

*Thank you!*
**Boston Globe Advertising**
04/16/05 2:25 PM

Notice of
Arrest of Vessel

In obedience to a Warrant of Seizure directed to me in the captioned proceeding, I have on the 01 day of April, 2005, seized and taken into my possession the following defendant: the SS NOBSKA, (hereinafter collectively referred to as the "Vessel") for the causes set forth in the Verified Complaint in rem, to wit; for foreclosure of maritime liens, now pending in the United States District Court for this District. The vessel is located in Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston National Historical Park, Boston, Massachusetts. The amount demanded is $214,813.67, attorneys' fees, plus costs.

I HEREBY GIVE NOTICE that, pursuant to Rule C(6)(b) of the Federal Rules of Civil Procedure, claims of persons entitled to possession of the Vessel, and application for intervention by persons claiming maritime liens or other interests in the Vessel must be filed with the Clerk of Court and a copy thereof served upon attorneys for plaintiff United States of American within ten (10) days after publication of this Notice in The Boston Globe and/or the Boston Herald; answers to the complaint, whether by such claimants to possession or by those claiming any other interest in the property, must be served and filed within twenty (20) days after date of publication of this Notice in the Boston Globe and/or the Boston Herald; that as to any person not so serving and filing his claim and answer, default will be noted and condemnation ordered; and that application for intervention under Rule 24 of the Federal Rules of Civil Procedure by person claiming maritime liens or other interests may be untimely if not filed within the time allowed for claims to possession

UNITED STATES MARSHAL FOR THE
DISTRICT OF MASSACHUSETTS

Notice of
Arrest of Vessel

In obedience to a Warrant of Seizure directed to me in the captioned proceeding, I have on the 01 day of April, 2005, seized and taken into my possession the following defendant: the SS NOBSKA, (hereinafter collectively referred to as the "Vessel") for the causes set forth in the Verified Complaint in rem, to wit; for foreclosure of maritime liens, now pending in the United States District Court for this District. The vessel is located in Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston National Historical Park, Boston, Massachusetts. The amount demanded is $214,813.67, attorneys' fees, plus costs.

I HEREBY GIVE NOTICE that, pursuant to Rule C(6)(b) of the Federal Rules of Civil Procedure, claims of persons entitled to possession of the Vessel, and application for intervention by persons claiming maritime liens or other interests in the Vessel must be filed with the Clerk of Court and a copy thereof served upon attorneys for plaintiff United States of American within ten (10) days after publication of this Notice in The Boston Globe and/or the Boston Herald; answers to the complaint, whether by such claimants to possession or by those claiming any other interest in the property, must be served and filed within twenty (20) days after date of publication of this Notice in the Boston Globe and/or the Boston Herald; that as to any person not so serving and filing his claim and answer, default will be noted and condemnation ordered; and that application for intervention under Rule 24 of the Federal Rules of Civil Procedure by person claiming maritime liens or other interests may be untimely if not filed within the time allowed for claims to possession

UNITED STATES MARSHAL FOR THE
DISTRICT OF MASSACHUSETTS

Notice of
Arrest of Vessel

In obedience to a Warrant of Seizure directed to me in the captioned proceeding, I have on the 01 day of April, 2005, seized and taken into my possession the following defendant: the SS NOBSKA, (hereinafter collectively referred to as the "Vessel") for the causes set forth in the Verified Complaint in rem, to wit; for foreclosure of maritime liens, now pending in the United States District Court for this District. The vessel is located in Dry Dock No. 1, Charlestown Navy Yard Unit of the Boston National Historical Park, Boston, Massachusetts. The amount demanded is $214,813.67, attorneys' fees, plus costs.

I HEREBY GIVE NOTICE that, pursuant to Rule C(6)(b) of the Federal Rules of Civil Procedure, claims of persons entitled to possession of the Vessel, and application for intervention by persons claiming maritime liens or other interests in the Vessel must be filed with the Clerk of Court and a copy thereof served upon attorneys for plaintiff United States of American within ten (10) days after publication of this Notice in The Boston Globe and/or the Boston Herald; answers to the complaint, whether by such claimants to possession or by those claiming any other interest in the property, must be served and filed within twenty (20) days after date of publication of this Notice in the Boston Globe and/or the Boston Herald; that as to any person not so serving and filing his claim and answer, default will be noted and condemnation ordered; and that application for intervention under Rule 24 of the Federal Rules of Civil Procedure by person claiming maritime liens or other interests may be untimely if not filed within the time allowed for claims to possession

UNITED STATES MARSHAL FOR THE
DISTRICT OF MASSACHUSETTS