UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-10507 NG |
| | ) | |
| v. | ) | |
| | ) | |
| SS NOBSKA its engines, boilers, | ) | |
| lockers, cables, chains, tackle, fittings | ) | |
| and spare parts, apparel, outfit, tools | ) | |
| and other equipment, and all other | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

UNITED STATES' EXPEDITED MOTION FOR INTERLOCUTORY SALE
OF THE SS NOBSKA WITH INCORPORATED MEMORANDUM OF LAW

INTRODUCTION

Plaintiff, the United States, filed its MOTION FOR SUMMARY JUDGMENT

DECLARING A MARITIME LIEN AGAINST THE SS NOBSKA WITH

INCORPORATED MEMORANDUM OF LAW on June 10, 2005. Clerk's file Doc. No.

18. Defendant, the SS NOBSKA ("Vessel"), did not file an opposition.[1] As a result, the

material facts of record set forth within the United States' motion for summary judgment

may be deemed admitted. LR, D. Mass. 56.1.

It is admitted that The New England Steamship Foundation ("Foundation"), owner

---

[1]    In addition, no third-party has filed a claim or intervened in this action.

of the NOBSKA, has left the Vessel in Dry Dock No. 1, Boston Historical Park, without authorization since August 16, 2001. The Vessel now approaches its fourth year of unauthorized occupancy of the government's dry dock. Unless the government, or conceivably another party, gains control of it and removes it, it will remain there indefinitely. The presence of the Vessel interferes with the use of the dry dock by the National Park Service ("NPS"), which needs to repair the dry dock itself to make it available for use by the USS CONSTITUTION and the USS CASSIN YOUNG, historic vessels permanently berthed at Boston Historical Park.

The Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims ("Supplemental Admiralty Rules"), Federal Rules of Civil Procedure, offer a means of removing a vessel when its owner does not or cannot remove it. The United States moves for an order directing the interlocutory sale of the Vessel under Supplemental Admiralty Rule E(9)(b), on the following grounds:

1.    The Vessel was arrested by the United States Marshal of this District on April 1, 2005, pursuant to a Warrant of Arrest authorized by an Order of this Court in accordance with Supplemental Admiralty Rule C(3). Statement of Material Facts of Record, ¶ 19.

2.    No person or entity has appeared for the purpose of filing a bond or stipulation for value in order to obtain the release of the Vessel in accordance with the applicable procedures set forth in Supplemental Admiralty Rule E(5). Interlocutory sale

2

of the Vessel is appropriate pursuant to Supplemental Admiralty Rule E(9)(b)(i)(C),

which provides for sale if "there is an unreasonable delay in securing release of the

property." Statement of Material Facts of Record, ¶ 24.

      3.      Supplemental Admiralty Rule E(9)(b)(i)(A) and (B) provide, respectively,

that sale is appropriate when an arrested vessel is liable to deterioration by being detained

pending the action or when the cost of keeping the vessel is excessive or disproportionate.

      4.      In this instance, custodia legis fees totaling $750 per day have accrued since

the arrest of the Vessel and will continue to accrue. Statement of Material Facts of

Record, ¶ 26.

## FACTUAL BACKGROUND

The facts are set forth within the United States' motion for summary judgment.

Clerk's file Doc. No. 18, pp. 3-7.

## DISCUSSION

THE FOUNDATION'S INABILITY TO SECURE RELEASE OF THE VESSEL, THE
COST OF KEEPING IT UNDER ARREST, AND THE NORMAL DETERIORATION
OF THE VESSEL PROVIDE THREE SEPARATE BASES FOR INTERLOCUTORY
SALE UNDER RULE E(9)(b).

An in rem arrest of a vessel serves the dual function of providing a court with

jurisdiction and providing a fund from which any judgment ultimately rendered may be

satisfied. Generally, an arrested vessel is released upon the posting of a bond or letter of

undertaking and it is from this source that a judgment is satisfied. See 29 James W.

Moore, Moore's Federal Practice § 704.02[1][e] (3d ed. 1997) ("The res can also be

released upon the posting of a bond, letter of undertaking or other substitute security, or by stipulation.  In fact, in many in rem actions, the res is released within a short time after it is arrested.") (citing Supplemental Admiralty Rule E(5)).

However, instances arise, as in the case at bar, where the arrested vessel is not released by the posting of a bond or other security.  The Court must then determine whether that vessel may be sold during the pendency of the action.  The relevant authority, Supplemental Admiralty Rule E(9)(b)(i), provides that an interlocutory sale is proper if:

> (A) the attached or arrested property is . . . liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or dis-proportionate; or
> (C) there is unreasonable delay in securing the release of the property.

See, e.g., Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338, 1341 n. 4 (5th Cir. 1981); Flota Maritime Browning de Cuba v. M/V Ciudad de la Habana, 245 F.Supp. 205 (D.Md. 1965), aff'd, 363 F.2d 733 (4th Cir. 1966); The Constel-lation, 20 F.Supp. 892, 893 (E.D.N.Y. 1937); The Owego, 289 F. 263, 266 (W.D. Wash. 1923).

As the three criteria of Supplemental Rule E(9)(b) are stated in the disjunctive, satisfaction of any one of the three grounds is sufficient to support a motion for interlocutory sale.  See, e.g., Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d at 1341 ("In order to prevail, [parties seeking interlocutory sale] need

only show one of the three criteria."). In the present case, all three criteria are satisfied.

    1.    <u>Failure to release the Vessel</u>

Supplemental Admiralty Rule E(9)(b) provides for interlocutory sale when there has been an unreasonable delay in releasing a vessel from arrest. <u>Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie</u>, 663 F.2d at 1341. In <u>Ferrous Fin. Serv. Co. v. O/S ARCTIC PRODUCER</u>, 567 F.Supp. 400 (W.D. Wash. 1983), the court ordered an interlocutory sale four months after the defendant vessel's arrest. In <u>Ferrous Fin. Serv.</u>, a preferred ship mortgagee filed an admiralty foreclosure action <u>in rem</u>, against the vessel, and <u>in personam</u>, against its owner. The latter filed an answer, affirmative defenses, and counterclaims premised upon the plaintiff mortgagee's alleged breach of contract and mis-representations. Shortly after commencement of the action, plaintiff moved for inter-locutory sale on the grounds, <u>inter alia</u>, that the vessel owner had not procured release of the vessel.

The owner opposed the motion, arguing that it was financially unable to post a bond and that the court could not order sale of the vessel until after it had rendered judgment on the complaint and counterclaims. The court rejected the argument and ordered the interlocutory sale to proceed, holding that the owner had unreasonably delayed in securing release of the vessel, and that the costs of keeping the vessel under arrest until rendering final judgment (a year or more) would be excessive.

In the present case, the Foundation apparently lacks the ability to secure release of

5

the Vessel by posting security under Supplemental Admiralty Rule E(5). Statement of

Material Facts of Record, ¶ 25. Therefore, absent interlocutory sale, the Vessel would

remain in the dry dock pending conclusion of this litigation.[2] To avoid that result, and to

return the dry dock to use, the United States asks that the Court order interlocutory sale of

the Vessel.

2.    Excessive Expense

The cost of keeping the Vessel offers a second justification for its sale. Until the

Vessel is sold, custodia legis costs of approximately $750 per day will continue to accrue.

Statement of Material Facts of Record, ¶ 26. To put the figure into perspective, a single

year of custodia legis expenses, even assuming no unusual emergency expenses arise, will

total $273,750, an opportunity cost borne by the taxpayers.

3.    Deterioration of the Vessel

Deterioration of the Vessel offers a third ground upon which the Court may base

its interlocutory sale. The Foundation has had since 1996 to make the Vessel seaworthy,

or even floatable, but has not done so. Statement of Material Facts of Record, ¶ 16. In

fact, no work has occurred in the past four years. Id. Photographs taken two years ago

show the Vessel to be in poor condition. Id. Because of constant exposure to the

elements, its condition has worsened and will continue to do so. The Vessel is "liable to

---

[2]    Should the Court grant the United States' motion for summary judgment, the sale of the
vessel would not be interlocutory, i.e., occurring during the pendency of the suit, but would
instead occur afterwards.

deterioration, decay, or injury by being detained in custody pending the action . . . ," as described within Supplemental Admiralty Rule E(9)(b). As the court in <u>Flota Maritime Browning de Cuba v. M/V Ciudad de la Habana</u>, <u>supra</u>, 245 F.Supp. at 210 (citations and internal quotation omitted), opined:  "The principle was established many years ago that where claimant refuses to make a deposit or make stipulation for the vessel's release, and there is a general deterioration of the vessel, a sale will be ordered."

CONCLUSION

As all three criteria of Supplemental Admiralty Rule E(9)(b) have been satisfied in this case, each of which would be sufficient to sustain an order of interlocutory sale, plaintiff requests that this Court issue the proposed order of interlocutory sale, attached.[3] Ex. A.

Dated:  July 12, 2005.

          Respectfully submitted,

          PETER D. KEISLER
          Assistant Attorney General

          MICHAEL J. SULLIVAN
          United States Attorney


          _____/s/_____
          ANITA JOHNSON
          Assistant U.S. Attorney

---

[3]    See <u>Fortis Bank v. M/V SHAMROCK,</u> 335 F.Supp.2d 150 (Me. 2004) (providing exemplar of order and marshal's notice of sale).

7

_Michael A. DiLauro_

MICHAEL A. DILAURO, Trial Attorney
U.S. Department of Justice
Post Office Box 14271
Washington, D.C. 20044-4271
Tel. (202) 616-4019
Fax (202) 616-4159
Counsel for the United States

OF COUNSEL:

Anthony R. Conte, Esq.
Regional Solicitor
U.S. Department of the Interior
Office of the Solicitor
One Gateway Center, Suite 612
Newton, MA 02458-2802

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of July, 2005, a copy of the foregoing

was forwarded via FedEx to the following:

> Joseph P. Quinn, Esq.
> Little Medeiros Kinder Bulman & Whitney PC
> 72 Pine St.
> Providence, RI 02903
> Tel. (401) 272-8080

> *Michael A. DiL*
> MICHAEL A. DILAURO, Trial Attorney

9

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-10507 NG |
| | ) | |
| v. | ) | |
| | ) | |
| SS NOBSKA its engines, boilers, | ) | |
| lockers, cables, chains, tackle, fittings | ) | |
| and spare parts, apparel, outfit, tools | ) | |
| and other equipment, and all other | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER FOR INTERLOCUTORY SALE OF THE SS NOBSKA

For good cause shown in accordance with Rule E(9)(b)(i), subsections (A), (B) and

(C), of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims,

Federal Rules of Civil Procedure, the Court hereby ORDERS that the SS NOBSKA

("Vessel") be sold by the United States Marshal at public auction and that the proceeds

from the sale be deposited in the registry of the Court to await further order of this Court.

The United States Marshal is hereby ORDERED to utilize the following procedures in

conducting the sale:

1.    Location of the Sale and Prior Notice

The sale shall be held by public auction to be conducted on _____,

_____ at _____. The auction shall be held on the steps of the John

Joseph Moakley United States Courthouse, 1 Courthouse Way, Suite 2300, Boston,

Massachusetts, and in the case of inclement or cold weather the auction may reconvened,

at the Marshal's sole discretion, to a nearby indoor location where cell phone reception

and use will allow for participants in the auction to remain in contact with their principals

during the course of the bidding.  The Marshal shall make provision for notice of the

changed location for any latecomers to the auction.

Prior to the public auction, a Notice of United States Marshal's Sale shall be

published in the Boston Herald and in The Boston Globe.  All Notices shall be published

within twenty-one (21) days prior to the sale.  As long as the publication schedule

permits, the Notice shall run in each publication at least three (3) times prior to sale.

Such Legal Notice shall include all of the information contained in the Notice of United

States Marshal's Sale attached to this Order.

Prior to the public auction, the United States Marshal may, in coordination with the

substitute custodian, arrange for viewing of the ship by potential bidders.  At the

discretion of the substitute custodian, persons desiring to board the vessel for such

viewing may be required to execute documents that bar or limit their right to recover for

personal injury incurred in boarding and/or viewing the ship.

2.    Conduct of the Sale

The sale shall be conducted by the Marshal, as a public auction in United States

Dollars (USD), with a starting bid of $0 and in bid increments at the sole discretion of the

Marshal. In order to participate in the bidding, the bidder must tender a certified check for $10,000.00 payable to the United States Marshals Service to be held by the Marshal during the auction, with said check to be returned to the bidder at the end of the auction if the bidder is not the successful bidder. Within five (5) business days, the successful bidder shall increase the amount on deposit with the United States Marshals Service to ten percent (10%) of the successful bid. The remaining balance shall be paid within ten (10) business days following the approval of the bid by the Court or thirty (30) calendar days from the auction dated, whichever is later. All payments by the successful bidder shall be made by wire transfer, certified check or cashier's check. Credit bids by the United States of America will also be accepted.

The successful bidder shall be required to pay the balance within three (3) days after the day on which the bid is accepted and shall be responsible for costs of keeping the vessel from the date that the bid is accepted. The successful bidder shall be required to remove the Vessel within thirty (30) days after the day on which the bid is accepted. If the successful bidder does not pay the balance of the purchase price or remove the Vessel within the time allowed, the bidder will be deemed to be in default. In such a case, the Marshal may accept the second highest bid or arrange a new sale. The defaulting bidder's deposit shall be forfeited and applied to any additional costs incurred by the Marshal because of the default, the balance being retained in the registry of the Court awaiting its order.

3.    Objection to and Confirmation of Sale

Any interested person may object to the sale by filing a written objection within

three (3) days following the date of auction and acceptance of the successful bid. Any

objection shall be served on all parties of record, the successful bidder and the United

States Marshal. Anyone filing an objection is required to deposit with the United States

Marshals Service a sum that is sufficient to pay the expense of maintaining the ship for at

least seven (7) days. Payment to the Marshal shall be made by wire transfer, certified

check or cashier's check.

The sale shall be confirmed by Order of this Court within five (5) business days

but no sooner that three (3) business days after the sale unless an objection to the sale has

been filed, in which case the Court shall hold a hearing on the confirmation of the sale.

The United States Marshal shall transfer title to the purchaser upon order of the Court and

receipt of the entire amount due under the bid.

If an objection to the sale is sustained, sums deposited by the successful bidder

will be returned forthwith. The sum deposited by the objector will be applied to pay the

fees and expenses incurred by the Marshal in keeping the property until it is resold, and

any remaining balance shall be returned to the objector. The objector will be reimbursed

for the expense of keeping the vessel from the proceeds of the subsequent sale.

4.    Deposit of Proceeds from the Sale

All proceeds from the sale shall be forthwith paid into the registry of the Court and

4

shall be disposed of by further order of the Court upon resolution of the merits of this litigation and in accordance with the relevant law.

     **DATED** at Boston, Massachusetts this \_\_\_ day of _____, 2005.


                            _____
                            **UNITED STATES DISTRICT JUDGE**

5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

"IN ADMIRALTY"

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-10507 NG |
| | ) | |
| v. | ) | |
| | ) | |
| SS NOBSKA its engines, boilers, | ) | |
| lockers, cables, chains, tackle, fittings | ) | |
| and spare parts, apparel, outfit, tools | ) | |
| and other equipment, and all other | ) | |
| appurtenances, etc., in rem, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOTICE OF UNITED STATES MARSHAL'S SALE

By virtue of an Order directing sale of the Vessel issued by the United States District Court for the District of Massachusetts on the ____ day of _____, 2005, notice is hereby given that I will sell by public auction to the highest and best bidder on _____, the _____ day of _____, 2005, at _____, at the front door entrance of the United States Courthouse, located on the steps of the John Joseph Moakley United States Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts, the following vessel:

The SS NOBSKA its engines, boilers, lockers, cables, chains, tackle, fittings and spare parts, apparel, outfit, tools and other equipment, and all other appurtenances, etc., in rem.

## DESCRIPTION NOT GUARANTEED – VESSEL SOLD "AS IS, WHERE IS," FREE AND CLEAR OF ALL CLAIMS, LIENS, MARITIME LIENS, AND ENCUMBRANCES OF ANY KIND

In order to participate in the bidding, the bidder must tender a certified check for $10,000.00 payable to the United States Marshals Service to be held by the Marshal during the auction, with said check to be returned to the bidder at the end of the auction if the bidder is not the successful bidder. Within five (5) business days, the successful bidder shall increase the amount on deposit with the United States Marshals Service to ten percent (10%) of the successful bid. The remaining balance shall be paid within ten (10) business days following the approval of the bid by the Court or thirty (30) calendar days from the auction dated, whichever is later. All payments by the successful bidder shall be made by wire transfer, certified check or cashier's check. Credit bids by the United States of America will also be accepted.

The successful bidder shall be required to pay the balance within three (3) days after the day on which the bid is accepted and shall be responsible for costs of keeping the vessel from the date that the bid is accepted. The successful bidder shall be required to remove the NOBSKA within thirty (30) days after the day on which the bid is accepted. If the successful bidder does not pay the balance of the purchase price or remove the NOBSKA within the time allowed, the bidder will be deemed to be in default. In such a case, the Marshal may accept the second highest bid or arrange a new sale. The defaulting bidder's deposit shall be forfeited and applied to any additional costs incurred by the Marshal because of the default, the balance being retained in the registry of the Court awaiting its order.

All prospective purchasers are advised that only valid bids may be made, and that anyone bidding without the ability to meet the requirements of the order for sale or any applicable statute, or who disrupts the sale, will be considered in violation of an order of the Court, and will be subject to appropriate sanctions, including but not limited to the costs of the sale, any resale and any additional in custodia legis and administrative expenses incurred as a result of said actions.

Upon completion of a Hold Harmless Agreement, furnished by the substitute custodian representative, Mr. David Brouillette, who can be telephoned at (617) 242-5646, the Vessel may be inspected at Dry Dock No. 1, Boston National Historical Park, Charlestown Navy Yard, Boston, Massachusetts.

2

_____
ALISON HODGKINS
United States Marshal

Interested individuals may contact:
Attorney:    Christine L. Pecora-Luster
Phone:       (202) 616-4019